COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. CT2022-0050 |
| JOSHUA A. CARBAUGH | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:    Criminal appeal from the Muskingum
County Court of Common Pleas, Case No.
CR2020-0031

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    April 18, 2023

APPEARANCES:

For Plaintiff-Appellee

RON WELCH
Prosecuting Attorney
BY: JOHN CONNOR DEVER
Assistant Prosecutor
27 North Fifth St., P.O. Box 189
Zanesville, OH 43702

For Defendant-Appellant

CHRIS BRIGDON
8138 Somerset Road
Thornville, OH 43076

*Gwin, P.J.*

{¶1} Defendant-appellant Joshua A. Carbaugh ["Carbaugh"] appeals his convictions and sentences after a jury trial in the Muskingum County Court of Common Pleas.

*Facts and Procedural History*

{¶2} The Muskingum County Grand Jury indicted Carbaugh on one count of rape in violation of R.C. 2907.02(A)(1)(b). The indictment stated that the victim, R.N.T., was seven years old during the incidents, and the indictment alleged that the rape occurred between October 11, 2019 and November 20, 2019. The first count of the indictment also contained a sexually violent predator specification in violation of R.C. 2941.148, alleging that Carbaugh had been convicted of a third-degree felony sexual assault in December, 2015 in the state of West Virginia. The second count of the indictment charged Carbaugh with one count of gross sexual imposition in violation of R.C. 2907.05. The indictment alleged that the sexual contact occurred between October 11, 2019 and October 20, 2019 when the victim R.N.T. was seven years old. Count three of the indictment charged Carbaugh with failure to register as a sex offender in violation of R.C. 2950.04(A)(2) between the dates of October 11, 2019 and October 18, 2019. Count four of the indictment charged Carbaugh with failure to register as a sex offender in violation of R.C. 2950.04(A)(2) between the dates of October 31, 2019 and November 8, 2019. Count five of the indictment charged Carbaugh with failure to register as a sex offender in violation of R.C. 2950.04(A)(2) between the dates of November 14, 2019 and November 20, 2019. Carbaugh pled not guilty and exercised his right to a jury trial.[1]

---

[1] Count one and Count two of the indictment were tried to a jury. Counts three, four and five were tried to the trial judge. 4T. at 616.

{¶3} The victim's great-grandmother M.M. testified that at the time of the offenses she had custody of R.N.T. 3T. at 404[2]. M.M. testified that during the Thanksgiving holiday in 2019, her granddaughter A.E. and her boyfriend, Carbaugh, came to visit from West Virginia. 3T. at 407. After the couple left to return to West Virginia, R.N.T. came crying to M.M. complaining of pain between her legs. 3T. at 408. M.M. laid R.N.T. down on the floor, and examined her. M.M. testified, "she was as red as a pack of cigarettes." Id. at 408-409. M.M. testified that R.N.T. disclosed to her that Carbaugh, "held her vagina apart and took his private and rubbed it up and down inside of me" and "she was beat red." Id. at 409. M.M. telephoned her son, G.E., and told him what R.N.T. had disclosed to her. G.E. called the police. 3T. at 400. Deputy Shawn Williams responded to the home. 2T. at 289-290. Deputy Williams spoke with M.M. and her son G.E. and collected evidence from the scene. R.N.T. was taken to Nationwide Children's Hospital for the Center of Family Safety and Healing, commonly referred to as C.A.C. 1T. at 198.

{¶4} Ashely Cooley testified that she is a medical forensic interviewer who, as part of a multi-disciplinary team, conducts an interview of a child to assess for allegations of abuse or neglect. 1T. at 199. The interview is recorded with Ms. Cooley alone in the room with the child. 1T. at 205. Other members of the team can watch as the interview is projected onto a screen in a separate room. Id.[3] Neither law enforcement or social services was present to view the interview. 1T. at 220.

---

[2] For clarity, the jury trial transcript will be referred to as, "__T.__," signifying the volume and the page number.

[3] The video of the interview was played for the jury and admitted into evidence. 1T. at 219. State's Exhibit V-1.

{¶5} Initially, R.N.T. denied any inappropriate conduct or touching had occurred. 1T. at 224; 245-246. Eventually, R.N.T. told Ms. Cooley that Carbaugh put his thing in her "monkey." 1T. at 225. R.N.T. told Ms. Cooley that it "felt fun." Id. at 227. She also told Ms. Cooley that she touched it with her hand. 1T. at 230. It was skinny and round and "gooey stuff was coming out the hole part." 1T. at 230. R.N.T. told Ms. Cooley that it was silver and gooey. Id. R.N.T. said that it went inside of her and felt warm. Id. at 231. R.N.T. reported that Carbaugh told her not to talk about it because he would go to jail. Id. at 232.

{¶6} Additionally, during the forensic interview, R.N.T. told Ms. Cooley that her younger brother had witnessed the acts and was told to go back to bed. 1T. at 246. Further R.N.T. said that her mother saw Carbaugh with "his thing in her monkey" and the mother laughed and asked if he could do that to her. 1T. at 247. Further, R.N.T. had stated that her mother was sleeping, and she had been bumped and woken up and did nothing. 1T. at 247. R.N.T. did not mention that she had been told not to say anything until Ms. Cooley asked her if she had been told not to say anything.

{¶7} R.N.T. testified that she was now nine years old. 3T. at 422. R.N.T. testified that she told her great-grandmother that her private parts between her legs hurt. Id. at 427-428. She testified it hurt because Carbaugh put his "monkey" inside mine…" Id. at 426; 437. She further testified that Carbaugh told her to keep it a secret. Id. R.N.T. testified that Carbaugh's "monkey" looked like a "hot dog." Id. at 428. She touched it with her hands and it felt like "cardboard." Id. She described white-ish, yellow-ish gooey stuff. 3T. at 429. R.N.T. did not remember going to C.A.C. and meeting with Ms. Cooley. 3T. at 430.

{¶8}  On cross-examination R.N.T. testified that it happened more than once.  3T. at 439.  Each time it occurred was either in the kitchen or the living room.  Id. In the kitchen, R.N.T. described standing in front as Carbaugh was sitting down.  1T. at 440.  Carbaugh told her to sit on his legs and he put his monkey into R.N.T.'s monkey.  Id. at 440-441.  She further testified that Carbaugh had to clean the oozy stuff out of her monkey afterward.  3T. at 451.

{¶9}  R.N.T. testified that when she told her great-grandmother that her private parts were hurting, she was told to lay down on a towel while M.M. looked at it, and it was "all red." 3T. at 444.  R.N.T. denied telling anyone that "Freddy Kruger" had hurt her.  3T. at 456.  She further denied that she ever told anyone that either her cousin T.E., her cousin's boyfriend Mark, or her brother had hurt her.  3T. at 457.  R.N.T. further denied that she ever told B.H. that she would tell people he had tried to touch her inappropriately. 3T. at 459.

{¶10} The defense called I.W. the grandmother of R.N.T. I.W. testified that R.N.T. has a reputation within the family as being a liar.  3T. at 495.  I.W. further claimed that R.N.T. falsely accused her biological father of touching her inappropriately.  Id. at 496-497.  I.W. testified that R.N.T. told her that Freddy Kruger kept wanting to touch her inappropriately.  Id. at 497.  I.W. further testified that R.N.T. has falsely accused her cousin and her cousin's boyfriend of trying to inappropriately touch her.  Id. at 498.  A person "R.S." was also reported by R.N.T. to be touching her inappropriately.  Id. at 500. I.W. did not report any of these incidents to the appropriate authorities.  Id. at 509.

{¶11} I.W. testified that she does not believe Carbaugh would do such a thing because "he's just not that type of guy." 3T. at 508-509.

{¶12} The defense next called B. H., R.N.T.'s biological father's roommate. B.H. testified R.N.T. had threatened him by stating she would tell that he had touched her inappropriately. 3T. at 524.

{¶13} R.N.T.'s mother, A.E. testified for the defense. She testified that her and Carbaugh came from West Virginia several times. 3T. at 536. Each time the couple would stay with A.E.'s grandmother, and each time R.N.T. was present. Id. A.E. testified that Carbaugh was never left alone for extended periods of time with R.N.T. Id. at 543. A.E. testified that R.N.T. got along well with Carbaugh. Id. at 547. A.E. testified that R.N.T. told her that she had made up the allegations because Carbaugh would not give her a cell phone when she was getting a bath and that she felt he was taking her mother away from her. 3T. at 551. A.E. testified that R.N.T. had been exposed to pornography accidently on multiple occasions. Id. at 552. A.E. further testified that R.N.T. had accused multiple people of the same inappropriate conduct.

{¶14} The jury found Carbaugh guilty of rape with a sexually violent predator specification, and gross sexual imposition. After hearing the evidence related to each count, the trial judge found Carbaugh guilty of three counts of failure to register. 4T. at 616-628; 732-733.

{¶15} The trial court sentence Carbaugh on count one to a sentence of life without parole, on count two to sixty months, and to a period of thirty-six months on each of counts four, five, and six. All counts were ordered to be served consecutively, for an aggregate prison sentence of life without parole plus fourteen years.

*Assignments of Error*

{¶16} Carbaugh raises six Assignments of Error,

{¶17} "I.  THE PROPORTIONALITY OF THE SENTENCE WAS INCONSISTENT WITH THE PRINCIPLES SET FORTH [IN] O.R.C.  §2929.11 AND FACTORS TO BE CONSIDERED IN O.R.C. §2929.12.

{¶18} "II. SHOULD THIS HONORABLE COURT SHOULD [sic.] VACATE THE TRIAL COURT'S DECISION TO IMPOSE CONSECUTIVE SENTENCES ON COUNTS 2-3 AND 5 BECAUSE THE CONSECUTIVE SENTENCES ARE IN CONTRAVENTION OF THE SENTENCING STATUTES.

{¶19} "III. THE CONVICTION WAS AGAINST THE WEIGHT OF THE EVIDENCE.

{¶20} "IV.  THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION.

{¶21} "V. THE TRIAL COURT ERRED WHEN ADMITTING THE STATE'S EXHIBIT V-1 WHICH WERE NOT STATEMENTS MADE FOR THE PURPOSE OF MEDICAL DIAGNOSIS OR TREATMENT.

{¶22} "VI. THE TRIAL COURT ERRED WHEN DENYING THE APPELLANT' S MOTION FOR MISTRIAL BASED ON PROSECUTORIAL MISCONDUCT."

I & II

{¶23} In his First Assignment of Error, Carbaugh contends that the trial judge failed to comply with the purpose and principles of sentencing as set forth in R.C. 2929.11 and R.C. 2929.12 when sentencing him to maximum consecutive sentences.  In his Second Assignment of Error, Carbaugh argues that the imposition of consecutive sentences is contrary to law.

**Standard of Appellate Review – Maximum Sentences**

{¶24} In accordance with R.C. 2953.08(A)(1), Carbaugh is entitled to appeal as of right the maximum sentence imposed on his conviction.

{¶25} A court reviewing a criminal sentence is required by R.C. 2953.08(F) to review the entire trial-court record, including any oral or written statements and presentence-investigation reports. R.C. 2953.08(F)(1) through (4). We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶22; *State v. Howell*, 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶31. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *See, also, State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.2d 659, ¶28.

**Issue for Appellate Review**: *Whether Carbaugh's sentence was imposed based on impermissible considerations—i.e., considerations that fall outside those that are contained in R.C. 2929.11 and 2929.12.*

{¶26} A trial court's imposition of a maximum prison term for a felony conviction is not contrary to law if the sentence is within the statutory range for the offense, and the court considers both the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth in R.C. 2929.12. *State v. Keith*, 8th Dist. Cuyahoga Nos. 103413 and 103414, 2016-Ohio-5234, ¶ 10, 16; *State v. Taylor*, 5th Dist. Richland No. 17CA29, 2017-Ohio-8996, ¶16. "[N]either R.C. 2929.11

nor 2929.12 requires [the] court to make any specific factual findings on the record." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 20, *citing State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31, and *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000).

{¶27} In *State v. Bryant*, the Court clarified,

> The narrow holding in *Jones* [163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649] is that R.C. 2953.08(G)(2) does not allow an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12. *See Jones* at ¶ 31, 39. Nothing about that holding should be construed as prohibiting appellate review of a sentence when the claim is that the sentence was improperly imposed based on impermissible considerations—i.e., considerations that fall outside those that are contained in R.C. 2929.11 and 2929.12. Indeed, in *Jones*, this court made clear that R.C. 2953.08(G)(2)(b) permits appellate courts to reverse or modify sentencing decisions that are "'otherwise contrary to law.'" *Jones* at ¶ 32, *quoting* R.C. 2953.08(G)(2)(b). This court also recognized that "otherwise contrary to law" means "'in violation of statute or legal regulations at a given time.'" Id. at ¶ 34 *quoting* Black's Law Dictionary 328 (6th Ed.1990). Accordingly, when a trial court imposes a sentence based on factors or considerations that are extraneous to those that are permitted by R.C. 2929.11 and 2929.12, that sentence is contrary to law. Claims that raise these types of issues are therefore reviewable.

168 Ohio St.3d 250, 2022-Ohio-1878, 198 N.E.3d 68, ¶22.

{¶28} Carbaugh takes exception with the following statement made by the trial judge,

> [B]ecause there's been a trend in our legislature and the courts to do away with life without parole sentences after a period of time.  They did that with all juveniles.  They may do it with other offenses.  So, I'm going to impose those sentences and run them consecutive to your life without parole just in the event that they may set it aside.  It's the same reason I went over the registration with you. They may set that aside somewhere in the future.

*Sentencing Transcript*, June 29, 2022 at 10.  ["ST."].   However, the trial court considered the pre-sentence investigation report, and three letters from family members of the victim. ST. at 3; 9. The trial court further considered the statements from Carbaugh's attorney and the state's attorney.  The court considered the young age of the child victim.

{¶29} We conclude that the trial court did not commit error when it sentenced Carbaugh to the maximum sentences.   Upon review, we find that the trial court's sentencing on the charges complies with applicable rules and sentencing statutes.  While Carbaugh may disagree with the weight given to these factors by the trial judge, Carbaugh sentence was within the applicable statutory range and therefore, we have no basis for concluding that it is contrary to law.  Carbaugh has not demonstrated that the trial court imposed the sentence based on impermissible considerations—i.e., considerations that fall outside those that are contained in R.C. 2929.11 and 2929.12.

**Standard of Appellate Review – Consecutive Sentences**

{¶30} Before a trial court imposes consecutive sentences, it must make specific findings which are delineated in R.C. 2929.14(C)(4).  Specifically, the trial court must find that "the consecutive service is necessary to protect the public from future crime or to punish the offender." Id. It must also find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." Id. Finally, the court must find at least one of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶31} An appellate court can reverse or modify the trial court's order of consecutive sentences if it clearly and convincingly finds that the record does not support the findings.  The evidentiary standard for changing the trial court's order of consecutive sentences is not deference to the trial court; the evidentiary standard is that the appellate

court, upon a de novo review of the record and the findings, has a "firm belief" or "conviction" that the findings are not supported by the evidence in the record. *State v. Gwynne,* Slip Op. No. 2022-Ohio-4607, 2022 WL 1780605 (Dec. 23, 2022), ¶23. ("*Gwynne III")*.

{¶32} The first step in consecutive-sentence review is to ensure that the consecutive-sentence findings under R.C. 2929.14(C)(4) have been made—i.e., the first and second findings regarding necessity and proportionality, as well as the third required finding under R.C. 2929.14(C)(4)(a), (b), or (c). *Gwynne III,* ¶ 25.

**Issue for Appellate Review**: *Whether the consecutive-sentence findings under R.C. 2929.14(C)(4) have been made—i.e., the first and second findings regarding necessity and proportionality, as well as the third required finding under R.C. 2929.14(C)(4)(a), (b), or (c)*

{¶33} At the sentencing hearing, the trial judge noted that Carbaugh was on supervision at the time he committed the offenses. ST. at 10. Further, the trial judge noted that Carbaugh's previous conviction in West Virginia,

> [I]s almost identical to this offense: The age of the victim; the mother willing to testify on your behalf which resulted in a reduced charge. It also resulted in an entry I couldn't present because the facts were so close that the judge put in that entry which had nothing to do with what you pled to would be too prejudicial at your trial.

ST. at 11. The judge found it significant that Carbaugh attempted to disguise his name to avoid anyone discovering his previous conviction. Id.; 4T. at 560-561.

{¶34} In *State v. Bonnell*, the Ohio Supreme Court held that "no statute directs a sentencing court to give or state reasons supporting imposition of consecutive sentences. Thus, a trial court is not required by Crim.R. 32(A)(4) to give reasons supporting its decision to impose consecutive sentence." 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶27. In ordering the sentences be served consecutively, the trial court simply needs to read the provisions of R.C. 2929.14(C)(4).

{¶35} Although not using the precise language, at the sentencing hearing and in the sentencing entry the facts given by the trial judge establish that he found that consecutive sentences were necessary to protect the public from future crime or to punish this offender; are not disproportionate to the seriousness of Carbaugh's conduct and to the danger he poses to the public and at least two of the multiple offenses were committed as part of one or more courses of conduct and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any course of conduct adequately reflects the seriousness of the defendant's conduct. The trial court further found that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. R.C. 2929.14(C)(4)(b).

{¶36} Thus, we find that the consecutive-sentence findings under R.C. 2929.14(C)(4) were made by the trial court in this case.

**Issue for Appellate Review:** *Whether the trial court's decision to impose consecutive sentences in Carbaugh's case is supported by the record*

{¶37} If the appellate court determines that the R.C. 2929.14(C)(4) consecutive-sentence findings have been made, the appellate court may then determine whether the

record clearly and convincingly supports those findings. *Gwynne III,* ¶ 26. This second step in consecutive sentence review requires the appellate court to review the record to ensure that the evidentiary basis reflected in the record be adequate to fully support the trial court's consecutive-sentence findings. The appellate court must focus on both the quantity and quality of the evidence in the record that either supports or contradicts the consecutive-sentence findings. *Gwynne III,* ¶ 29. If even one of the consecutive-sentence findings is found not to be supported by the record under the clear-and-convincing standard provided by R.C. 2953.08(G)(2), then the trial court's order of consecutive sentences must be either modified or vacated by the appellate court. *See* R.C. 2953.08(G)(2). *Gwynne III,* ¶ 26.

{¶38} R.C. 2953.08(F) explains what the "record" entails for purposes of appellate review of consecutive sentences. Specifically, it includes any of the following that may be applicable: written presentence, psychiatric, or other investigative reports submitted to the trial court prior to sentencing; the trial court record in the case in which the sentence was imposed; any oral or written statements made to or by the court at sentencing; and any written findings the court was required to make in connection with a grant of judicial release. R.C. 2953.08(F)(1)-(4).

{¶39} To determine whether the record supports the trial court's imposition of consecutive sentences we must be mindful that, "within the context of R.C. 2929.14(C)(4), whether consecutive sentences are necessary to protect the public is completely dependent on whether the defendant's criminal history demonstrates the need for the defendant to be incapacitated by a lengthy term of incarceration. A trial court cannot make this necessity finding without considering the overall prison term that it will be

imposing." *Gwynne III,* ¶ 15.   According to the Ohio Supreme Court, "the record must contain a basis upon which a reviewing court can determine that the trial court made the findings required by R.C. 2929.14(C)(4) before it imposed consecutive sentences." *Bonnell*, ¶28.  "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." Id. at ¶29.

{¶40} Upon review, we find that the trial court's sentencing on the charges complies with applicable rules and sentencing statutes.  The sentence was within the statutory sentencing range.  Carbaugh has not shown that the trial court imposed the sentence based on impermissible considerations—i.e., considerations that fall outside those that are contained in R.C. 2929.11 and R.C. 2929.12. The trial judge's statements concerning future legislative action do not negate the findings made by the trial court, nor the support found for those findings in the record.  Because the record contains clear and convincing evidence supporting the trial court's findings under R.C. 2929.14(C)(4), we have no basis for concluding that it is contrary to law.

{¶41} Carbaugh's First and Second Assignments of Error are overruled.

### III & IV

{¶42} In his Third Assignment of Error, Carbaugh maintains that his convictions for rape and gross sexual imposition are against the manifest weight of the evidence[4].  In his Fourth Assignment of Error, Carbaugh argues that there is insufficient evidence to support his convictions for rape and gross sexual imposition[5].

---

[4] Carbaugh does not advance any argument with respect to his convictions for three counts of Failure to Register.  *See*, App.R. 12(A)(2); App.R. 16(A)(7).

[5] See footnote 4, supra.

**Standard of Appellate Review– Sufficiency of the Evidence.**

{¶43} The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."  This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt.  *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 577 U.S. 92, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016).  The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court.  *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30.  "This naturally entails a review of the elements of the charged offense and a review of the state's evidence."  *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶44} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed.  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997)*; *Walker*, 150 Ohio St.3d at ¶30.  "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Jenks* at paragraph two of the syllabus.  *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19.  Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'"  *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001),

*quoting Jenks* at paragraph two of the syllabus; *Walker* 150 Ohio St.3d at ¶31.  We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'"  *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**Issue for Appellate Review**:  *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind that Carbaugh was guilty beyond a reasonable doubt of Rape in violation of R.C. 2907.02(A)(1)(b) and Gross Sexual Imposition in violation of R.C. 2907.05.*

{¶45} R.C. 2907.02, Rape provides,

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

\* \* \*

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

{¶46} R.C. 2907.01(A) defines "sexual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of

another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

**{¶47}** We find that there was overwhelming evidence of Carbaugh's guilt. In the case at bar, R.N.T. was seven years old at the time of the offenses. Evidence was presented that she referred to Carbaugh as "dad." 3T. at 408; 413-414; 425. A.E., R.N.T.'s mother, described Carbaugh as being "like a dad to her." 4T. at 543. R.N.T. testified that Carbaugh raped her vaginally. She described Carbaugh's penis and the gooey stuff coming out of the hole. R.N.T. described the incidents in court and during her C.A.C. interview.

**{¶48}** We are mindful, that "[c]orroboration of victim testimony in rape cases is not required." *State v. Meeks*, 5th Dist. Stark No. 2014CA00017, 2015-Ohio-1527, 34 N.E.3d 382, ¶ 81, *appeal not allowed*, 143 Ohio St.3d 1543, 2015-Ohio-4633, 40 N.E.3d 1180, *citing State v. Cuthbert*, 5th Dist. Delaware No. 11CAA070065, 2012-Ohio-4472, 2012 WL 4474720, ¶ 28 and *State v. Johnson*, 112 Ohio St.3d 210 –217, 2006-Ohio-6404, 858 N.E.2d 1144, at ¶ 53. Likewise, a victim's testimony concerning penetration need not be corroborated by the medical evidence. *See State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996) (even without corroborating medical evidence, a victim's testimony that the perpetrator placed his penis in her vagina constitutes penetration).

**{¶49}** Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Carbaugh engaged in sexual conduct with R.N.T. who was seven years old at the time. We hold, therefore, that the state met its burden of production regarding each element of

the crime and, accordingly, there was enough evidence to support Carbaugh's conviction for rape.

{¶50} R.C. 2907.05, Gross Sexual Imposition provides,

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

* * *

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

* * *

{¶51} "'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶52} Carbaugh does not challenge the evidence on any specific element of the offense; instead, his arguments are premised upon the victims' credibility. We have held that the testimony of one witness, if believed by the factfinder, is enough to support a conviction. *See, State v. Dunn*, 5th Dist. Stark No. 2008-CA-00137, 2009-Ohio-1688, ¶ 133. The weight to be given the evidence introduced at trial and the credibility of the witnesses are primarily for the trier of fact to determine. *State v. Thomas*, 70 Ohio St.2d 79, 434 N.E.2d 1356 (1982), syllabus.

**{¶53}** When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." *State v. Pizzulo*, 11th Dist. Trumbull No. 2009-T-0105, 2010-Ohio-2048, ¶ 11. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id. The finder of fact may take note of the inconsistencies and resolve or discount them accordingly, but such inconsistencies do not render defendant's conviction against the manifest weight of the evidence. *State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714, at *3 (May 28, 1996).

**{¶54}** Evidence was presented that R.N.T. touched Carbaugh's penis. 1T. at 230; 3T. at 428. Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Carbaugh engaged in sexual contact with R.N.T. who was seven years old at the time. We hold, therefore, that the state met its burden of production regarding each element of the crime and, accordingly, there was sufficient evidence to support Carbaugh's conviction for gross sexual imposition.

### Standard of Appellate Review – Manifest Weight.

**{¶55}** As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as*

*stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355; State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

**{¶56}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, *supra,* 78 Ohio St.3d at 386-387, 678 N.E.2d 541(1997), *State v. Williams,* 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶83.   When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony.   *Thompkins* at 387, 678 N.E.2d 541, *citing Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652(1982) (quotation marks omitted); *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1244, ¶25, citing *Thompkins.*

**{¶57}** Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"   *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983).   Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction."   Id.

**Issue for Appellate Review**:  *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.*

**{¶58}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'"   *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678

N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the entire record in this matter we find Carbaugh's convictions are not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Carbaugh's guilt.

{¶59} Upon review of the entire record, weighing the evidence and all reasonable inferences as a thirteenth juror, including considering the credibility of witnesses, we cannot reach the conclusion that the trier of facts lost its way and created a manifest miscarriage of justice. We do not find the jury erred when it found Carbaugh guilty. Taken as a whole, the testimony and record contain ample evidence of Carbaugh's responsibility for all the alleged crimes. The fact that the jury chose to believe the testimony of the victim does not, in and of itself, render his convictions against the manifest weight of the evidence. While Carbaugh is certainly free to argue that R.N.T. is not a reliable witness and the defense witnesses should be found to be more credible that the state's witnesses, on a full review of the record we cannot say that the jury clearly lost its way or created a manifest injustice by choosing to believe the testimony of R.N.T.

{¶60} The state presented testimony and evidence from which the jury could have found all the essential elements of the offenses proven beyond a reasonable doubt. The fact that the state may have relied on circumstantial evidence in proving Carbaugh's guilt does not make his convictions any less sound.

{¶61} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Carbaugh was convicted.

**{¶62}** Carbaugh's Third and Fourth Assignments of Error are overruled.

V.

**{¶63}** In his Fifth Assignment of Error, Carbaugh contends the trial court's decision to admit the video of the forensic interview of the child at C.A.C. in its entirety was prejudicial error because it was coordinated with law enforcement, and evidence for future prosecution was obtained. [Appellant's brief at 27]. Specifically, Carbaugh argues that the interview was not admissible under the hearsay exception pursuant to Evid. R. 803(4) for statements made for medical diagnosis or treatment.

**{¶64}** However, we note that Carbaugh does not cite to any portion of the record where defense counsel at trial objected pursuant to Evid.R. 803(4) to any statement related during Ms. Cooley's testimony, or to the admission of the interview as evidence. Normally, an appellate court need not consider an error that was not called to the attention of the trial court at a time when the error could have been avoided or corrected by the trial court. *State v. Williams*, 51 Ohio St.2d 112, 117, 364 N.E.2d 1364 (1977). Accordingly, a claim of error in such a situation is usually deemed to be waived absent plain error. *See* Crim.R. 52(B).

**Standard of Appellate Review – Plain Error**

**{¶65}** Crim.R. 52 distinguishes between errors to which the defendant objected at trial and errors to which the defendant failed to object at trial. *See State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶14. If the error is one to which the defendant objected at trial, an appellate court reviews the error under the Crim.R. 52(A) harmless-error standard and "the *government* bears the burden of demonstrating that the error did not affect the substantial rights of the defendant." (Emphasis sic.) Id. at ¶ 15. If

the error is one to which the defendant failed to object at trial, an appellate court reviews the error under the Crim.R. 52(B) plain-error standard and "the *defendant* bears the burden of demonstrating that a plain error affected his substantial rights." (Emphasis sic.) Id. at ¶ 14. *State v. Hackett,* 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.2d 75, ¶91.

{¶66} The Ohio Supreme Court reviewed the plain error standard of review to be utilized by appellate courts,

> Under this standard, the defendant bears the burden of "showing that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16. An appellate court has discretion to notice plain error and therefore "is not required to correct it." *Rogers* at ¶ 23.

*State v. West*, 168 Ohio St.3d 605, 2022-Ohio-1556, 200 N.E.3d 1048, ¶ 22. *See also State v. McAlpin*, 169 Ohio St.3d 279, 2022-Ohio-1567, 204 N.E.3d 459, ¶ 90. ("McAlpin could not establish plain error, because he cannot show a reasonable probability that but for standby counsel's actions, the jury would have acquitted him.").

{¶67} Carbaugh did not raise plain error. Because he does not claim plain error on appeal, we need not consider it. *See, State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 17–20 (appellate court need not consider plain error where appellant fails to timely raise plain-error claim); *State v. Gavin*, 4th Dist. Scioto No. 13CA3592, 2015-Ohio-2996, ¶ 25, *citing Wright v. Ohio Dept. of Jobs & Family Servs.*, 9th Dist. Lorain No. 12CA010264, 2013-Ohio-2260, ¶ 22 ("when a claim is forfeited on appeal and the appellant does not raise plain error, the appellate court will not create an

argument on his behalf"). However, even if we were to consider Carbaugh's argument he would not prevail.

**Issue for Appellate Review:** *Whether but for the admission of the forensic interview of the child in its entirety the jury would have acquitted Carbaugh*

{¶68} At the outset we note that R.N.T. testified at trial. She was therefore available for cross-examination concerning statements she made during the forensic interview at C.A.C. Accordingly, Carbaugh was not denied his right to confrontation. *Crawford v. Washington*, 541 U.S. 36, at 59, fn. 9, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *California v. Green*, 399 U.S. 149, 162, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *State v. Perez,* 124 Ohio St.3d 112, 2009-Ohio-6179, 920 N.E.2d 104, ¶124; *State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶109.

{¶69} Evid.R. 803(4) provides that the following are not excluded by the hearsay rule: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

{¶70} In *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, the Ohio Supreme Court considered the admissibility of statements made during interviews at child-advocacy centers. *Arnold* involved a Confrontation Clause challenge rather than Evid.R. 803(4), but the pertinent analysis is similar in many respects. The issue in *Arnold* was whether a child's statements during an interview were for medical diagnosis or treatment, making them "non-testimonial," or whether they primarily served

a forensic or investigative purpose, making them "testimonial" in violation of the defendant's confrontation rights.

{¶71} The Supreme Court first noted that child-advocacy centers are unique insofar as a single interview with a child serves "dual purposes," which are: "(1) to gather forensic information to investigate and potentially prosecute a defendant for the offense and (2) to elicit information necessary for medical diagnosis and treatment of the victim." *Arnold* at ¶ 33. The majority then turned to the substance of the child's interview. It reasoned that some of the child's statements primarily had a forensic or investigative purpose. They included the child's assertion that the defendant had "shut and locked the bedroom door before raping her; her descriptions of where her mother and brother were while she was in the bedroom with Arnold, of Arnold's boxer shorts, of him removing them, and of what Arnold's 'pee-pee' looked like; and her statement that Arnold removed her underwear." Id. at ¶ 34. The Ohio Supreme Court reasoned that "[t]hese statements likely were not necessary for medical diagnosis or treatment. Rather, they related primarily to the state's investigation." Id.

{¶72} The *Arnold* Court also found, however, that "other statements provided information that was necessary to diagnose and medically treat" the child victim. Id. at ¶ 37. It noted that "[t]he history obtained during the interview is important for the doctor or nurse practitioner to make an accurate diagnosis and to determine what evaluation and treatment are necessary. For example, the nurse practitioner conducts a 'head to toe' examination of all children, but only examines the genital area of patients who disclose sexual abuse. That portion of the exam is to identify any trauma or injury sustained during the alleged abuse." Id. In particular, the Ohio Supreme Court held that the following

statements by the victim during the interview were necessary for medical diagnosis or treatment: "statements that described the acts that Arnold performed, including that Arnold touched her 'pee-pee,' that Arnold's 'pee-pee' went inside her 'pee-pee,' that Arnold's 'pee-pee' touched her 'butt,' that Arnold's hand touched her 'pee-pee,' and that Arnold's mouth touched her 'pee-pee.' " Id. at ¶ 38. The fact that the victim already had undergone a "rape-kit examination" did not dissuade the majority from finding that the foregoing statements were necessary for subsequent medical diagnosis or treatment. Id. at ¶ 39. The majority also found nothing objectionable about considering the child's statements individually to determine which ones were for medical diagnosis or treatment and to exclude those that were not. Id. at ¶ 42. Finally, the Ohio Supreme Court found nothing objectionable about the fact that police watched the interview or the fact that information obtained for medical purposes ultimately was used to prosecute the defendant. These considerations did "not change the fact" that some of the child's statements "were made for medical diagnosis and treatment." Id. at ¶ 43.

{¶73} In the case at bar, the evidence establishes that neither the police nor children's services workers participated in the interview of R.N.T. Nor were they in the separate room watching the interview. 1T. at 122. As in *Arnold*, a portion of R.N.T.'s statements described the sexual acts Carbaugh performed on her or required her to perform. Some statements were relevant to medical diagnosis or treatment and, hence, admissible.

{¶74} It is apparent from the facts presented at trial, however, that Carbaugh cannot demonstrate a reasonable *probability* that but for the admission of the child's forensic interview, the result of the trial would have been different. Even without the

interview, R.N.T. identified Carbaugh as her attacker and detailed the sexual assault during her testimony at Carbaugh's jury trial.

{¶75} Further, we find beyond a reasonable doubt, that the admission of the entire forensic interview of the child did not contribute to Carbaugh's conviction. *See, State v. Aeschilmann,* 5th Dist. Stark No. 2013 CA 00192, 2014-Ohio-4462, ¶95-96. R.N.T. testified at trial and was subject to cross-examination. The jury was able to personally observe her physical characteristics, and demeanor. Thus, any inadmissible evidence in the forensic interview is cumulative to other evidence that was admitted concerning Carbaugh's sexual assault on R.N.T.

{¶76} Carbaugh's Fifth Assignment of Error is overruled.

VI.

{¶77} In his Sixth Assignment of Error, Carbaugh argues that the trial court abused its discretion in failing to grant a mistrial based upon the misconduct of the prosecutor.

{¶78} During cross-examination of the prosecutor of I.W. the grandmother of R.N.T., the following exchange occurred,

Q. Would your opinion change if you knew he [Carbaugh] went to prison for sexual assault?

A. Not if I knew him and [R.N.T.] didn't come to me and say, hey, he touched me. I don't care what you're in prison for as long as you don't reflect it on me or my grandchildren.

Q. Would your opinion change if he was in prison for sexually assaulting a 10-year-old child?

3T. at 511.  Defense counsel objected.  After a bench conference the trial judge permitted the prosecutor to proceed with the question[6].  3T. at 511.

### STANDARD OF APPELLATE REVIEW – MISTRIAL.

{¶79} "Mistrials need to be declared only when the ends of justice so require and a fair trial is no longer possible."  *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991).  The standard of review for evaluating a trial court's decision to grant or deny a mistrial is abuse of discretion.  *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984). In reviewing a claim that a mistrial should have been granted, the Ohio Supreme Court has noted "[t]his court has instead adopted an approach which grants great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial."  *State v. Shaffer*, 5th Dist. Richland No. 2003-CA-0108, 2004-Ohio-3717, ¶18 *quoting State v. Widner* [68 Ohio St.2d 188, 429 N.E.2d 1065(1981).  *See, also, Wade v. Hunter*, 336 U.S. 684, 687, 69 S.Ct. 834, 836, 93 L.Ed. 974(1949).

{¶80} An abuse of discretion can be found where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick,* 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶35; *In re Guardianship of S .H.*, 9th Dist. Medina No. 13CA0066–M, 2013–Ohio–4380, ¶ 9; *State v. Firouzmandi,* 5th Dist. Licking No. 2006–CA–41, 2006–Ohio–5823, ¶54.

**Issue for Appellate Review:** *Whether the trial court abused its discretion by denying Carbaugh's motion for a mistrial.*

---

[6] The bench conference occurred off the record.  3T. at 511.

{¶81} After denying Carbaugh's motion for a mistrial, the trial judge agreed to give the jury a curative instruction as defense counsel requested. 4T. at 604-605. The trial judge instructed the jury,

> Now, I am going to indicate to you there was a question asked that was objected to and I sustained the objection. The question was asked by the prosecutor of the last witness and – for the defense, and it was improper. You're to disregard it.
>
> Any implication in the question that was asked is to be disregarded. Any implication in to the questions involving the criminal history of the defendant are to be disregarded.
>
> The prosecutor is admonished not to bring those things up again.

4T. at 606-607.

{¶82} Carbaugh's prior conviction was relevant to the sexually violent predator specification attached to the rape charge. The trial court instructed the jury,

> If you find the defendant guilty of rape, you must decide an additional factual question pertaining to a - - to the sexually violent predator specification. You must decide whether the State has proven beyond a reasonable doubt that the defendant has been convicted in the past of a prior offense. One, sexual assault, a felony of the third degree, Case No. 14-F-41, in the Circuit Court of Barbour County, West Virginia, date of conviction, December of 2015.

4T. at 718. The fact that Carbaugh was convicted of sexual assault was admissible as an element of the crime for which he was indicted in the present case. Even without the

prosecutor's questions, the jury was properly made aware of the prior conviction. The only statements that arguably may not have been admissible were the fact that Carbaugh went to prison for the prior sexual assault, and that the prior sexual assault involved a ten-year old girl.

{¶83} The fact that the prosecutor engaged in some improper argument, however, does not warrant reversal unless the remarks prejudicially affected substantial rights of the accused. *State v. Hessler*, 90 Ohio St.3d 108, 125, 734 N.E.2d 1237(2000). In making this determination, we must consider the effect of any misconduct in the context of the entire trial. *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993).

{¶84} In the case at bar, the improper question only occurred on one occasion during the trial. The trial judge instructed the jury to disregard it, and further admonished the prosecutor. "Juries are presumed to follow their instructions." *Zafiro v. United States* 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317(1993). "A presumption always exists that the jury has followed the instructions given to it by the trial court," *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313(1990), at paragraph four of the syllabus*, rehearing denied*, 54 Ohio St.3d 716, 562 N.E.2d 163.

{¶85} Looking at the prosecutor's questions in the larger context of the trial, we find the prosecutor's question did not prejudicially affect Carbaugh's substantial due process rights. As we discussed in our disposition of Carbaugh's Third and Fourth Assignments of Error, his convictions are based upon sufficient evidence and are not against the manifest weight of the evidence. Evidence concerning Carbaugh's prior conviction was admissible to prove the sexually violent predator specification. The prosecutor's mention of the age of the previous victim was not flagrant or repeated.

{¶86} We find Carbaugh was not denied his right to due process and fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

{¶87} Carbaugh's Sixth Assignment of Error is overruled.

{¶88} The judgment of the Muskingum County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Wise, J., and

Delaney, J., concur