Daniel WEBSTER, et al., Plaintiffs,

v.

FULTON COUNTY, GEORGIA,
et al., Defendants.

No. CIV.A.1:96CV2399TWT.

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 8, 2000.

Richmond Mason Barge, Parks Chesin & Miller, Atlanta, GA, Patrick W. McKee, Office of Patrick W. McKee, Atlanta, GA, for Daniel Webster, Peggy Webster, Webster Green Thumb Company, plaintiffs.

Overtis Hicks Brantley, Linda T. Walker, Magistrate Judge, Office of Fulton County Attorney, Atlanta, GA, Keith Mark Wiener, Holland & Knight, Atlanta, GA, Dorothy Yates Kirkley, Elizabeth Penn Payne, Kirkley & Payne, Atlanta, GA, for Fulton County, defendant.

J. Scott Carr, Altman Kritzer & Levick, Atlanta, GA, Linda T. Walker, Magistrate Judge, Office of Fulton County Attorney, Atlanta, GA, Keith Mark Wiener, Holland & Knight, Atlanta, GA, for Mitch J. Skandalakis, Michael Hightower, Nancy A. Boxill, Emma I. Darnell, Gordon L. Joyner, Tom Lowe, Robert E. Fulton, Michael Cooper, defendants.

## ORDER

THRASH, District Judge.

This matter is before the Court on the Defendants' Motion for Hearing on the Admissibility of Statistical Evidence [Doc. 237]. The Defendants contend that the Court should conduct a hearing concerning the admissibility of the report and testimony of Dr. George Easton, the Plaintiff's expert statistician. Defendants rely upon

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

The Eleventh Circuit has applied *Daubert* in a pair of recent cases. In *City of Tuscaloosa v. Harcros Chem., Inc.*, 158 F.3d 548 (11th Cir.1998), the court discussed at length the standards to be applied to expert testimony following *Daubert*. The court summarized the standards as follows:

> Expert testimony may be admitted into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Id.* at 562. It noted that the inquiry is a "flexible one." *Id.* at 563, n. 16. The court observed that "[w]hile Daubert hearings are not required by law or by rules of procedure, they are almost always fruitful uses of the court's time and resources in complicated cases involving multiple expert witnesses, such as the instant case." *Id.* at 565, n. 21. The decision in *Harcros* is particularly instructive because it involved a challenge to the testimony of a statistician. In holding that the district court erred in excluding the testimony, the court stated:

> [M]ost of McClave's testimony is entirely within his competence as a statistician and would be helpful to a trier of fact. Moreover, McClave utilized well-established and reliable methodologies in the preparation of most of his statistics and his testimony. He generated the statistics underlying his testimony through simple compilation of data from the plaintiff municipalities' records, from documents and books obtained from the defendants through discovery, and from public sources. McClave's compilations of that data into utile measurements of bid prices, costs, tie bid frequencies, incumbency rates, and so on, and his testimony regarding estimated damages, are the products of simple arithmetic and algebra and of multiple regression analysis, a methodology that is well-established as reliable.

*Id.* at 565–566. In *Daubert*, one of the criteria the Court used to assess the admissibility of expert testimony was the ability of the expert's conclusions to be tested by other experts in the same field. In *Harcros*, the court noted that this is not the sine qua non of admissibility.

> Economic or statistical analysis of markets alleged to be collusive, for instance, cannot readily be repeatedly tested, because each such case is widely different from other such cases and because such cases cannot be made the subject of repeated experiments. The proper inquiry regarding the reliability of the methodologies implemented by economic and statistical experts in this context is not whether other experts, faced with substantially similar facts, have repeatedly reached the same conclusions (because there will be few or no cases that have presented substantially similar facts). Instead, the proper inquiry is whether the techniques utilized by the experts are reliable in light of the factors (other than testability) identified in Daubert and in light of other factors bearing on the reliability of the methodologies.

*Id.* at 566, n. 25. The Eleventh Circuit also applied *Daubert* in *Allison v. McGhan Medical Corp.*, 184 F.3d 1300 (11th Cir. 1999). In that breast implant case, the court held that the district court did not abuse its discretion in excluding the testimony of the plaintiff's causation experts. The court emphasized the gatekeeper role of the trial judge. "The judge's role is to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of

probative value." *Id.* at 1311–12. With this understanding of the controlling law from the Supreme Court and the Eleventh Circuit, the Court denies the motion for a *Daubert* hearing for the following two reasons.

■ First, the motion is untimely. Mindful of the important role that the Court has as gatekeeper to keep unreliable and irrelevant information from the jury, a pretrial request for a *Daubert* hearing must be made in a timely fashion or the objection is waived. A pretrial request for a *Daubert* hearing should be made within a reasonable time after the close of discovery if the grounds for the objection can be reasonably anticipated. The Court cannot, at will, set aside other scheduled matters to address a late-filed *Daubert* motion when, as in this case, the trial is set to begin within a matter of days. Certainly, a pretrial request for a *Daubert* hearing should be made well in advance of the first time a case appears on a trial calendar.

In this case, the discovery period ended on May 31, 1998. Motions for summary judgment were then filed by both sides. In denying the County's motion for summary judgment in February, 1999, the Court relied upon Dr. Easton's report. A bench trial was then scheduled in May, 1999, as to the claim for declaratory and injunctive relief. Dr. Easton testified at the bench trial, and the Court relied upon his testimony in finding that the County's MFBE program was unconstitutional. On August 31, 1999, the Court denied the Defendants request to stay further proceedings pending its appeal of the Order enjoining the use of racial, ethnic or gender preferences in the award of County contracts. The case was then put on the Court's December trial calendar which began on December 6, 1999. At a pretrial conference on November 30, 1999, the Court granted the parties request to continue the case to the Court's January 10, 2000 trial calendar. The case was not reached in January because of the trial of criminal cases subject to the Speedy Trial Act. This motion seeking a *Daubert* hearing was filed on December 29, 1999. It was submitted by the Clerk to the Court on January 11, 2000, while the Court was in the midst of hearings in criminal cases. The following week, counsel were advised that this would be the first case to be tried on the Court's February 14, 2000, jury trial calendar. This extended recitation of the chronology of this case is set forth to explain why this request for an evidentiary hearing is being addressed only days before the trial of this case is to commence.

■ "A trial court has managerial power that has been described as 'the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Gordon v. Eastern Air Lines, Inc. (In re Air Crash Disaster at Florida Everglades on December 29, 1972),* 549 F.2d 1006, 1014–15 (5th Cir.1977) (quoting *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153, 158 (1936)). The Court cannot control its docket if the scheduling of a trial or the trial itself is disrupted by the late filing of a request for a *Daubert* hearing. The Defendants have had multiple opportunities to request a *Daubert* hearing with respect to Dr. Easton's testimony. They failed to do so until the eve of trial. The motion is denied as untimely.

■ The motion is also denied on the merits. The Court has already considered Dr. Easton's report in ruling on the summary judgment motions, and has heard and relied upon his testimony in arriving at its findings of fact following the bench trial. To paraphrase the Eleventh Circuit in *Harcros,* Dr. Easton's testimony is entirely within his competence as a statistician and would be helpful to a trier of fact. Moreover, he utilized well-established and reliable methodologies in the preparation of most of his statistics and his testimony. He generated the statistics underlying his testimony through simple compilation of data from the County's records and from public sources. Dr. Easton's compilations of that data into bid frequencies, availability of minority contractors, and so on, are

the products of simple arithmetic and algebra and of multiple regression analysis, a methodology that is well-established as reliable. *Harcros,* 158 F.3d at 565–66. He employed the same methodologies as the Defendants' expert statistician, and utilized data sources that the Defendants' experts recognized to be the best data available. The techniques utilized by the expert are reliable in light of the factors (other than testability) identified in *Daubert* and in light of other factors bearing on the reliability of the methodologies. *Id.* at 566, n. 25. This is one of those, perhaps rare, instances where conducting an evidentiary hearing on the *Daubert* objection would not be a fruitful use of the Court's time and resources. The Defendants' Motion for Hearing on the Admissibility of Statistical Evidence [Doc. 237] is DENIED.