[Cite as *State v. Hart*, 2026-Ohio-236.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 2024 CA 0073 |
| Plaintiff – Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Richland County Court of Common Pleas, Case No. 2023 CR 0580R |
| CAROLYN S. HART | Judgment:   Affirmed |
| Defendant – Appellant | Date of Judgment Entry:January 23, 2026 |

**BEFORE:**   WILLIAM B. HOFFMAN, P.J., KEVIN W. POPHAM, J., DAVID M. GORMLEY, J.  Appellate Judges

**APPEARANCES:** MICHELLE A. FINK, MEGAN HOBART, for Plaintiff-Appellee; TIMOTHY B. HACKETT, for Defendant-Appellant

OPINION

*Popham, J.*

{¶1}   Defendant-appellant Carolyn S. Hart ("Hart") appeals from her conviction and sentence following a jury trial in the Richland County Court of Common Pleas.  For the reasons below, we affirm.

**Facts and Procedural History**

{¶2}   On August 11, 2023, the Richland County Grand Jury indicted Hart on one count of aggravated arson, a second-degree felony in violation of R.C. 2909.02(A)(2)/(B)(3), and one count of arson, a fourth-degree felony in violation of R.C.

2909.03(A)(1)/(D)(2)(b). The matter proceeded to jury trial beginning September 12, 2024. The evidence adduced at trial established the following sequence of events.

**Events Leading to the Fire**

{¶3}     In late July 2021, seventy-six-year-old B.F. allowed Hart to move into her Home Avenue residence after the two met at a local pawn shop. *3T. at 251-260*. By June 2022, tensions developed when Hart began moving numerous belongings—without permission—into the home. These items accumulated on the kitchen counters, around the stovetop, and throughout the living room. *3T. at 274-278*; *State's Exhibit 21.* Concerned about the growing clutter, B.F. photographed the conditions.  She also presented pictures of her kitchen before the fire. *3T. at 275; State's Exhibit 21.*

{¶4}     B.F. testified that Hart told B.F. frequently—two or three times per week—that Hart had left the stove burner on. *3T. at 267-268*. Approximately one month before the fire, Hart also asked about renters' insurance, although B.F. was unaware whether Hart ever purchased coverage. *3T. at 266-267.*

{¶5}     In July 2022, Hart's 11-year-old granddaughter, J.D., moved into the home. *3T. at 280.*

{¶6}     On Saturday, August 6, 2022, Hart asked B.F. whether she and J.D. could accompany B.F. to church the following morning. *3T. at 282*. B.F. agreed and informed Hart she had secured a ride.

**Events of August 7, 2022**

{¶7}     On Sunday morning, August 7, 2022, B.F. prepared for church and made herself oatmeal in the microwave. *3T. at 283-284*. She testified that she did not use the stove at any point that weekend. *3T. at 285*. Hart told B.F. she still planned to attend

church, while J.D. would visit her other grandmother. *Id.* B.F. left the home around 12:40 p.m., leaving Hart and J.D. inside. *3T. at 286-290.*

**Discovery of the Fire**

{¶8} When B.F. returned home later that afternoon, emergency crews were already present. *3T. at 286-288.* B.F.'s daughter informed her that the kitchen had burned. As B.F. approached the residence, she saw items on the porch—stacked on yard-sale tables. The items had been inside the home earlier that day. *3T. at 279, 289; State's Exhibit 21, Item #7.*

{¶9} Three days later, B.F. inadvertently opened mail addressed to Hart and discovered a $5,000 renters' insurance check. *3T. at 299; State's Exhibit 12.* B.F. testified that Hart told her on the day of the fire that she had obtained renters' insurance. *Id.* When Hart failed to retrieve the check within two weeks, B.F. returned it to the insurer[1]. *3T. at 301.*

{¶10} Although B.F. initially told Investigator Ransom that she did not believe Hart had intentionally set the fire, she provided that statement before discovering the insurance payment. *3T. at 296.*

**Fire Department Evidence**

{¶11} Assistant Chief Michael Carey[2] arrived at approximately 2:25 p.m. and extinguished the fire—confined to the kitchen—within seconds using a 2.5-gallon extinguisher. *3T. at 371-372.* Carey observed that the right-front stove burner was set on "low," and the surrounding countertop was crowded with food items. *3T. at 384.* Hart told Carey that B.F. often left the stove on. *3T. at 375.*

---

[1] After the fire, Hart and J.D. moved out of B.F.'s home.
[2] At the time of the fire, Carey was a captain with the Mansfield Fire Department. *3T. at 372.*

{¶12}   However, based on the burn patterns and the location of the main body of fire, Carey determined that Hart's explanation did not align with the physical evidence. *3T. at 376-377; State's Exhibit 22*. He therefore requested a fire investigator report to the scene.

**Testimony of J.D.**

{¶13}   J.D., who was 13 years old at the time of trial, corroborated key elements of the State's case. She testified that she had never known B.F. to leave the stove on. *3T. at 446*. After B.F. left for church, J.D. and Hart moved items from inside the home to the porch. *3T. at 444*. When they finished, Hart told J.D. not to go back inside. *Id.*

{¶14}   J.D. further testified that she heard Hart tell first responders that B.F. left the stove on, yet Hart privately told her that a fan caused the fire. *3T. at 447-448*. After the fire, Hart instructed J.D. not to disclose their new location to B.F. *3T. at 449*.

**Insurance-Related Evidence**

{¶15}   The insurance evidence further contextualized events surrounding the fire and bore directly on Hart's credibility. As noted, B.F. discovered a $5,000 renters' insurance check only days after the incident, despite being unaware that Hart had obtained coverage. *3T. at 299; State's Exhibit 12*. After Hart failed to retrieve the check for two weeks, B.F. returned it to the insurer. *3T. at 301*. The State supplemented this testimony with detailed evidence from Liberty Mutual representatives.

**The Insurance Testimony**

{¶16}   Carolyn McClain, a senior paralegal specialist with Liberty Mutual, testified that the company issued a renters' insurance policy to Hart effective August 5, 2022—two

days before the fire. *4T. at 478-480*; *State's Exhibits 3*-5. McClain explained that Hart later submitted a list of property allegedly destroyed in the fire. *Id. at 481; State's Exhibit 7.*

{¶17} The State also presented testimony from Steven Golden, a subrogation resolution specialist. Golden reviewed the fire report, Liberty Mutual's internal notes, and the full claim file. *4T. at 494*. Golden testified that Hart's claimed losses included crafting materials, living-room furniture, clothing, small kitchen appliances, a television, and a stove. *Id. at 495; State's Exhibit 6.* Golden questioned the legitimacy of the stove claim because there was no indication Hart owned such a stove. *Id. at 497-498.*

{¶18} Golden further testified that the claim file reflected multiple calls from B.F., who insisted the company should not pay the claim. *4T. at 505*. The file documented two conflicting accounts: B.F. reported she believed the fire was intentionally set, while Hart asserted that B.F. left a burner on. *4T. at 506.* Because the evidence did not support one version over the other, Golden closed the investigation without making a determination. *4T. at 501-502, 513-514.*

{¶19} Despite the unresolved inconsistencies, Liberty Mutual issued a $5,000 payment to Hart. *4T. at 496.* Hart later reported difficulty accessing the electronic funds and requested reissuance. *4T. at 511.*

**The State's Expert – Investigator Christopher Ransom**

{¶20} The State presented expert testimony regarding the fire's origin. Investigator Christopher Ransom, qualified as an expert in fire investigation, conducted a comprehensive scene examination. *4T. at 540-544; State's Exhibits 1, 8*. He also reviewed surveillance footage showing B.F. leaving for church and two individuals—consistent with

Hart and J.D.—removing items from the home shortly before the fire. *4T. at 551-564; State's Exhibits. 2, 2A, 23.*

{¶21} Based on burn patterns, the scene conditions, the insurance records, and the National Fire Protection Association (NFPA) 921 Guide for Fire and Explosion Investigations, Ransom concluded that the stove was not a competent ignition source, that electrical causes were excluded, and that the fire resulted from deliberate human action. *4T. at 526, 583-594; State's Exhibit 9.*

### The Defense Expert – Russell Scott Bennett

{¶22} The defense countered with expert testimony from Russell Scott Bennett, who opined that the fire's cause should be classified as "undetermined." *5T. at 815, 836.* Bennett was highly critical of Ransom's investigation and conclusions as lacking proper fire investigation techniques and not following proper protocols. Bennett testified that both the stove and the back counter were "plausible and possible" ignition sources, and that he could not identify one as more probable. *5T. at 845-847.* Bennett did not rule out the possibility of intentional human involvement. *5T. at 848.* Bennett criticized Ransom's failure to include the stove as a possible fire source.

### The State's Rebuttal Expert – Assistant Chief Brian Peterman

{¶23} Assistant Chief Brian Peterman, of the State Fire Marshal's Office, testified in rebuttal. After reviewing the full investigative record, Peterman agreed with Ransom that the fire was incendiary[3]. *6T. at 898-900; State's Exhibit 19.* Although he believed Ransom should have further analyzed the stove as a secondary ignition source, Peterman found no physical evidence supporting an accidental cause. *6T. at 899-900.* He ultimately

---

[3] An incendiary fire is one that is intentionally ignited.

affirmed the Mansfield Fire Department's conclusion that the fire was deliberately set. *Id.; State's Exhibit 19.*

**Verdict and Sentencing**

{¶24} During deliberations, defense counsel raised concern about alleged prosecutorial misconduct in closing argument and asked whether a mistrial would be appropriate. *6T. at 1032*. The trial court stated it had observed no impropriety and indicated that any mistrial motion would be denied. Counsel did not file, renew, or pursue a motion for a mistrial.

{¶25} On September 20, 2024, the jury returned guilty verdicts on both counts - aggravated arson and arson. *7T. at 1045*.

{¶26} The trial court ordered Hart to pay $3,328 in restitution to B.F. *8T. at 1008*. The offenses of aggravated arson and arson merged for sentencing, and the court imposed an indefinite prison term with a minimum term of seven years and a potential maximum term of ten and one-half years. Hart was also advised of her obligations under the arson registry. *8T. at 1095-1097, 1108-1110.*

**Assignments of Error**

{¶27} Hart raises six assignments of error for our consideration,

{¶28} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW THEN ABUSED ITS DISCRETION WHEN IT ABDICATED ITS GATEKEEPING DUTY AND PERMITTED LT. CHRISTOPHER RANSOM TO TESTIFY AS AN "EXPERT," OVER OBJECTION, WITHOUT EVER CONDUCTING A RELIABILITY ASSESSMENT AS REQUIRED BY EVID.R. 702(C), THUS VIOLATING MS. HART'S DUE PROCESS RIGHTS TO A FAIR

TRIAL UNDER U.S. CONST., AMENDS. V AND XIV AND OHIO CONST., ART. I, § 10 AND 16."

{¶29} "II. THE TRIAL COURT ABUSED ITS DISCRETION AND UNDERMINED MS. HART'S RIGHTS UNDER CRIM.R. 16(K) WHEN IT ALLOWED THE PROSECUTION TO PRESENT IMPROPER "REBUTTAL" EVIDENCE FROM A SECOND EXPERT, WHOSE PURPOSE WAS NOT TO REFUTE THE OPINIONS OF THE DEFENSE'S EXPERT, BUT TO REINFORCE THE UNSCIENTIFIC OPINIONS OF ITS LEAD EXPERT."

{¶30} "III. MS. HART WAS DEPRIVED OF HER CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL, WHEN TRIAL COUNSEL FAILED TO OBJECT TO IMPROPER EXPERT OPINION TESTIMONY FROM AN UNQUALIFIED LAY WITNESS, IN VIOLATION OF EVID.R. 701 AND 702, THE U.S. CONST., AMEND. VI, AND OHIO CONST., ART. I, § 10 AND 16."

{¶31} "IV. THE TRIAL COURT ERRED WHEN, OVER OBJECTION, IT PERMITTED THE PROSECUTOR TO IMPROPERLY SHIFT THE BURDEN OF PROOF WHILE CROSS-EXAMINING THE DEFENSE'S EXPERT WITNESS, VIOLATING MS. HART'S DUE PROCESS RIGHTS UNDER THE U.S. CONST., AMENDS. V AND XIV AND OHIO CONST., ART. I, § 16."

{¶32} "V. THE PROSECUTOR'S MISCONDUCT DURING CLOSING ARGUMENT DEPRIVED MS. HART OF HER DUE PROCESS RIGHTS TO A FUNDAMENTALLY FAIR TRIAL, IN VIOLATION OF THE U.S. CONST., AMENDS. V AND XIV, AND OHIO CONST., ART. I, § 16."

{¶33} "VI.  THE CUMULATIVE EFFECT OF THESE ERRORS DEPRIVED MS. HART OF HER STATE AND FEDERAL DUE PROCESS RIGHTS TO A FUNDAMENTALLY FAIR TRIAL, IN VIOLATION OF U.S. CONST., AMENDS. V AND XIV, AND OHIO CONST., ART. I, § 16."

## I.

{¶34}  In her first assignment of error, Hart contends that the trial court abused its discretion by admitting Ransom's opinion testimony as expert evidence without first determining that his opinion was sufficiently reliable. We disagree.

**Governing Standards**

{¶35}  A trial court has broad discretion in ruling on evidentiary matters, so long as its decisions comply with the Rules of Evidence and Procedure. *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271 (1991). Even where an abuse of discretion is shown, reversal is warranted only if the error affected a substantial right or undermined substantial justice. *Beard v. Meridia Huron Hosp.*, 2005-Ohio-4787; *State v. Lundgren*, 73 Ohio St.3d 474, 486 (1995); Evid.R. 103(A). An abuse of discretion requires more than an error in judgment; it requires a showing of "perversity of will, passion, prejudice, partiality, or moral delinquency," *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993), or a decision that is unreasonable, legally erroneous, or results in manifest injustice. *Tennant v. Gallick*, 2014-Ohio-477, ¶ 35 (9th Dist.); *In re Guardianship of S.H.*, 2013-Ohio-4380, ¶ 9 (9th Dist.); *State v. Firouzmandi,* 2006-Ohio-5823, ¶ 54 (5th Dist.); *Donaldson v. Donaldson*, 2024-Ohio-4597, ¶ 70 (5th Dist.); *State v. Roman-Navarre*, 2025-Ohio-3156, ¶ 115 (5th Dist.).

**Evid.R. 702 and the *Daubert* Framework**

{¶36} Effective July 1, 2024, Evid.R. 702 was amended to codify the *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) standard for expert testimony by requiring the proponent to show it is more likely than not that:

1). The *** testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

2). The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter; and

3). The *** testimony is based on reliable scientific, technical, or other specialized information and the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

{¶37} Courts assess reliability by considering whether the method has been tested, subjected to peer review, has a known error rate, and enjoys general acceptance in the relevant field. *Terry v. Caputo*, 2007-Ohio-5023, ¶ 25; *Miller v. Bike Ath. Co*., 80 Ohio St.3d 607, 611 (1998). These factors are flexible and non-exclusive, and the focus is on methodology rather than the ultimate conclusion. *Daubert*, 509 U.S. at 594-595; *Miller,* at 611-612.

{¶38} The amended Ohio rule mirrors the 2023 amendments to Fed.R. Evid. 702, implemented to correct decisions that mistakenly treated an expert's basis and methodology as issues of weight rather than admissibility. *Taylor v. Bristol-Myers Squibb Co. (In re Onglyza)*, 93 F.4th 339, 348 n.7 (6th Cir. 2024); *Ohio PERS v. Fed. Home Loan Mtge. Corp*., 2025 U.S. Dist. LEXIS 58257 at *9 (N.D. Ohio Mar. 28, 2025). Although expert

testimony must rest on a reliable foundation and cannot be speculative, testimony with a reasonable factual basis is admissible, with remaining challenges going to weight. *United States v. Ramer*, 883 F.3d 659, 680 (6th Cir. 2018); *Hulsing Ents., LLC v. Fazio Mechanical Servs.*, 2025 U.S. Dist. LEXIS 205432 at *9 (N.D. Ohio Oct. 19, 2025). Rejection of expert testimony "is the exception, rather than the rule." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008).

### *Daubert* Hearings

**{¶39}** A separate *Daubert* hearing, or reliability determination hearing, is not mandatory. The trial court has broad discretion in determining how to fulfill its gatekeeping function. *State v. Roberts*, 2017-Ohio-9079, ¶ 16 (9th Dist.); *Sliwinski v. St. Edwards*, 2014-Ohio-4655, ¶ 15 (9th Dist.); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The decision whether to hold a hearing is itself reviewed for abuse of discretion. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 532; *State v. Kegg*, 2025-Ohio-2651, ¶ 29 (4th Dist.).

### Expert-Qualification Standard

**{¶40}** Under Evid.R. 104(A), the trial court acts as gatekeeper for expert qualifications. A witness may qualify as an expert through study, experience, or other specialized knowledge, even without formal certification. *State v. Fleming*, 2003-Ohio-7005, ¶ 21 (12th Dist.); *State v. Thomas*, 2002-Ohio-6624, ¶ 46. Determining whether a witness is qualified to testify as an expert is a threshold inquiry that precedes the reliability determination. *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F.Supp.3d 612, 636 (S.D.N.Y. 2016); *United States v. Smith*, 2025 U.S. Dist. LEXIS 232478 (S.D.N.Y. Nov. 26, 2025).

**Application: Ransom's Qualifications**

{¶41} The record supports the trial court's determination that Ransom was qualified as an expert in fire investigation. He testified that he had responded to hundreds of fires with the Mansfield Fire Department; held Firefighter II certification requiring up to 400 hours of training; completed a tested fire-investigation course at the Ohio Fire Academy; tested out of additional coursework to receive International Association of Arson Investigators ("IAAI") certification; held the rank of Fire Investigation Technician; and had conducted seventy-one fire investigations by the time of trial. *4T. at 521-526; State's Exhibit 17*. Because an expert need not possess "complete knowledge of the field," but only sufficient knowledge to assist the trier of fact, Ransom's credentials were sufficient. *Thomas*, 2002-Ohio-6624, ¶ 46. The trial court therefore did not abuse its discretion in recognizing Ransom as an expert.

{¶42} Once an expert is qualified, the court evaluates the reliability of the opinion. The question is not whether the expert is correct, but whether the opinion rests on a reliable foundation rather than unsupported speculation. *In re Onglyza*, 93 F.4th 339 (6th Cir. 2024) (quoting *Scrap Metal*, 527 F.3d at 529-530); *AIG Specialty Ins. Co. v. Site Ctrs. Corp.*, 2025 U.S. Dist. LEXIS 202805 at *8 (N.D. Ohio Mar. 28, 2025). Expert testimony is admissible if it assists the trier of fact and is the product of reliable principles and methods. Evid.R. 702; *AIG Specialty*, 2025 U.S. Dist. LEXIS 202805 at *8-9. Challenges to "shaky but admissible" evidence are addressed through cross-examination and contrary proof. *Daubert*, 509 U.S. at 596.

**Timeliness of Hart's Objection**

{¶43}   The record shows that Hart had ample opportunity to request a *Daubert* hearing or reliability determination long before trial. The State disclosed Ransom's report in September 2023 and his CV in February 2024; Hart disclosed her own expert in April 2024. Trial began in September 2024, and five witnesses testified before Ransom took the stand.

{¶44}   Courts routinely hold that a party may forfeit the right to a *Daubert* hearing or reliability determination by delaying until trial, or once trial is underway, to make the request. *Alfred v. Caterpillar, Inc.,* 262 F.3d 1083, 1086-1087 (10th Cir. 2001); *Webster v. Fulton Cty*., 85 F.Supp.2d 1375, 1377 (N.D. Ga. 2000). Although a pretrial determination is not mandatory, Hart offers no reason for waiting over a year—and until after five witnesses had testified—to raise any reliability objection. The Criminal Rules aim to eliminate gamesmanship and prevent surprise. *State v. Darmond*, 2013-Ohio-966, ¶ 19. *See also* Crim.R. 16(K).

**Adequacy of the Objection and Waiver**

{¶45}   Leaving aside timeliness, Hart's objection fails on the merits. Although she objected to Ransom's qualifications, she did not inform the court she was challenging the reliability of his methodology under Evid.R. 702(C), did not request a *Daubert* hearing, and did not ask the court to make a reliability finding. After the objection was overruled, she did not renew or clarify it.

{¶46}   A party cannot take advantage of error she induced or invited. *State ex rel. Smith v. O'Connor,* 71 Ohio St.3d 660, 663 (1995). And failure to specifically invoke Evid.R. 702(C)'s reliability requirement waives all but plain error. *State v. Drummond*,

2006-Ohio-5084, ¶ 119; *State v. Williams*, 2004-Ohio-1130, ¶ 20 (4th Dist.); *Selbee v. Van Buskirk*, 2018-Ohio-1262, ¶ 51 (4th Dist.); *United States v. Olivas*, 150 F.4th 1107, 1112 (9th Cir. 2025). Hart's qualification-only objection was therefore insufficient to preserve a reliability challenge.

**Harmless-Error Review**

{¶47}  Even if we assume the trial court erred by admitting Ransom's testimony without expressly articulating its reliability findings, Hart cannot show prejudice. When a court admits expert testimony without performing its *Daubert* obligations, or without making an express reliability finding, the reviewing court examines whether the error was harmless. *United States v. Christian*, 749 F.3d 806, 813 (9th Cir. 2014); *United States v. Ruvalcaba-Garcia,* 923 F.3d 1183, 1189-1190 (9th Cir. 2019); *State v. Brook*, 2024-Ohio-3074. ¶71 (5th Dist.); *Welly v. Welly*, 2015-Ohio-4804, ¶ 23 (3d Dist.); *Tartt v. Unified Sch. Dist. No. 475*, 2025 U.S. App. LEXIS 15892, *12-13 (10th Cir. June 27, 2025); *Indian Harbor Ins. Co. v. Covington Flooring Co.*, 2025 U.S. App. LEXIS 2743, *4 (5th Cir. Feb. 6, 2025); *EcoFactor, Inc. v. Google LLC,* 137 F.4th 1333, 1338 (Fed. Cir. 2025).

{¶48}  This inquiry asks: (1) whether the error prejudiced the defendant; (2) whether the error was harmless beyond a reasonable doubt; and (3) whether the remaining evidence establishes guilt beyond a reasonable doubt. *State v. Harris*, 2015-Ohio-166, ¶ 37; *State v. Roberts*, 2025-Ohio-5120, ¶ 138; *State v. Boaston*, 2020-Ohio-1061, ¶ 63; *Brook*, 2024-Ohio-3074, ¶ 72.

{¶49}  Hart cannot satisfy this test.

**Defense Expert Testimony**

{¶50}   The defense expert, Bennett, substantially corroborated the plausibility of Ransom's conclusion. Bennett testified that Ransom's hypothesis—that the fire originated beneath the upper wall cabinet—was "equally possible and plausible" as Bennett's alternative theory involving the stove. *5T at 845-846*. Bennett also conceded he could not rule out an intentional human act. *5T. at 847-849.*

{¶51}   Bennett's principal criticism concerned methodology, asserting that Ransom should have investigated the stove as a secondary ignition source, and carried out a much more detailed examination of the evidence. *5T at 839*. Thus, Bennett's position was that the cause was "undetermined." *Id.* Competing interpretations, however, do not render one opinion unreliable; they present a classic "battle of the experts," in which critiques go to weight, not admissibility. *Alexander v. Mt. Carmel Med. Ctr.,* 56 Ohio St.2d 155, 159; *State v. Ayers,* 2022-Ohio-1910, ¶ 75 (5th Dist.).

{¶52}   Moreover, Hart conducted an extensive and detailed cross-examination of Ransom. *5T at 612-746*. The jury heard all methodological criticisms and was free to weigh them.

**Remaining Evidence**

{¶53}   Even without Ransom's testimony, the State presented substantial independent evidence establishing Hart's guilt.

**Circumstantial Evidence.**

{¶54}   Circumstantial evidence carries the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus; *State v. Roberts*, 2025-Ohio-5120, ¶ 139. Of course, jurors may draw reasonable inferences

from the evidence and rely on their common sense. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Allen*, 1995-Ohio-283, ¶ 45; *State v. McKnight*, 2005-Ohio-6046, ¶ 75.

**B.F.'s Testimony.**

{¶55}  B.F. testified she did not use the stove the weekend of the fire and that Hart repeatedly accused her—incorrectly—of leaving the stove on. *3T at 285, 267-268.* Hart used the stove the night before the fire. *3T. at 348.*

**J.D.'s Testimony.**

{¶56}  J.D. testified she had never known B.F. to leave the stove on and that no one used it the day of the fire. *3T at 446, 445*. She testified that she helped Hart move personal belongings from the house to the porch before the fire.

**Insurance Evidence.**

{¶57}  Hart obtained renters' insurance two days before the fire and submitted claims for property she did not own—conduct consistent with motive and inconsistent with accident.

**Surveillance Footage.**

{¶58}  Video showed B.F. leaving for church and two individuals—consistent with Hart and J.D.—moving items from the house to the porch shortly before the fire. *4T at 551-564; State's Exhibits 2, 2A, 23.*

**Assistant Chief Carey.**

{¶59}  Carey testified that, based upon his experience, the burn patterns and indicators contradicted Hart's explanation. *3T at 376-377; State's Exhibit 22.*

{¶60}  Taken as a whole, this evidence strongly supports Hart's guilt independent of Ransom's testimony.

**Conclusion**

{¶61}   Because (1) Hart forfeited any reliability challenge to Ransom's testimony by failing to specifically raise it, (2) the trial court acted within its discretion in recognizing Ransom as an expert, and (3) any assumed error was harmless beyond a reasonable doubt, Hart's first assignment of error is overruled.

**II.**

{¶62}   In her second assignment of error, Hart contends that the trial court abused its discretion by permitting the State to call Assistant Chief Brian Peterman as a rebuttal witness. We disagree.

**Background**

{¶63}   On July 22, 2024, the State moved to continue the July 29, 2024, trial date, explaining that it had "gone to great lengths to secure an expert [Brian Peterman] in response to the Defense's Expert Report." *Docket Entry No. 38*. At the July 24, 2024, hearing on the State's motion, the trial court noted that it had granted the defense several continuances over a period of months. *Motion T. at 3*. The court acknowledged that at a previous pretrial, it permitted the State to determine whether it needed a new expert and then set July 29, 2024, as a date certain for trial. *Id.*

{¶64}   The State represented that Peterman could not complete his report before July 29, 2024, and requested a continuance both to finalize the report and to give the defense the 21-day review period required by Crim.R. 16(K). *Motion T. at 4.* The State also recommended that Hart be released on her own recognizance pending the rescheduled trial. *Motion T. at 19.* In a July 26, 2024, entry, the trial court granted the continuance but made no ruling regarding the admissibility of Peterman's testimony at trial.

{¶65} Hart did not object at trial to Peterman testifying as a rebuttal witness; consequently, our review is limited to plain error. *6T. at 884-887*[4].

**Plain-Error Standard**

{¶66} Crim.R. 52 distinguishes between preserved error, which is reviewed for harmlessness, and unpreserved error, which is reviewed for plain error. *State v. Jones,* 2020-Ohio-3051, ¶¶ 17-18. Under Crim.R. 52(b), the defendant bears the burden of establishing (1) an error, (2) that is plain or obvious, and (3) that affected the outcome of the trial. *State v. McAlpin*, 2022-Ohio-1567, ¶ 66; *State v. Rogers*, 2015-Ohio-2459, ¶ 22. All three elements must be satisfied before relief may be granted. *State v. Bailey*, 2022-Ohio-4407, ¶ 9, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶67} To show an effect on substantial rights, the defendant must demonstrate a reasonable probability of prejudice. *Rogers* at ¶ 22; *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83 (2004). Even where the elements are met, an appellate court is not required to correct the error and will do so only in exceptional circumstances to prevent a manifest miscarriage of justice. *Rogers* at ¶ 23; *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**Governing Law on Rebuttal Testimony**

{¶68} The admission of evidence, including rebuttal evidence, lies within the sound discretion of the trial court. *McManaway v. Fairfield Med. Ctr.*, 2006-Ohio-1915, ¶ 22 (5th Dist.); *State v. Hymore*, 9 Ohio St.2d 122, 128 (1967). Rebuttal evidence is that which "explain[s], refute[s], or disproves new facts introduced into evidence by the adverse party." *State v. McNeill*, 83 Ohio St.3d 438, 446 (1998). A party has an unconditional right

---

[4] The defense objection before trial was to the trial court's granting of the state's motion to continue, not to the state calling Peterman as a witness, per se, at trial. *Motion T. at 14-15.*

to present rebuttal testimony when: (1) the evidence is not cumulative, (2) it would not have been appropriate in the party's case-in-chief, and (3) it addresses matters first raised in the opponent's case-in-chief. *Phung v. Waste Mgt., Inc.,* 71 Ohio St.3d 408, 410 (1994); *Brothers v. Morrone-O'Keefe Dev. Co.*, 2006-Ohio-1160, ¶ 6 (10th Dist.); *Westfall v. Aultman Hosp.,* 2017-Ohio-1250, ¶ 96 (5th Dist.).

**Application**

{¶69}  During the State's case-in-chief, Investigator Ransom testified regarding his methodology, his conclusion that the fire was incendiary, and his conclusion that the stove burner was not a competent ignition source. *4T. at 583-594; State's Exhibit 9*. In response, the defense presented expert Russell Scott Bennett, who opined that the cause of the fire was "undetermined" because both the stove and the back counter were "plausible and possible" ignition sources, and that he could not identify one as more probable. *5T. at 815, 836, 845-847*. Bennett also conceded he could not rule out an intentional human act. *Id. at 848.*

{¶70}  The State then called Assistant Chief Peterman in rebuttal. Peterman—assistant chief of the Ohio State Fire Marshal's Fire and Explosion Investigations Bureau and a participant on the NFPA 921 technical committee—had been disclosed to the defense as early as July 22, 2024. *6T. at 887-893*. Peterman testified that although Ransom should have more fully considered the right-front stove burner as a secondary ignition source, he nonetheless agreed that the burner was properly excluded as the primary cause of the fire. *Id. at 899- 900; 902; 931-932.* Peterman further testified that the most probable cause of the fire was incendiary, consistent with the conclusion reached by the Mansfield Fire Department. *Id. at 899.*

{¶71} Peterman's testimony directly rebutted the defense expert's theory that the fire's cause was "undetermined" because two equally plausible ignition sources existed. His testimony was therefore proper rebuttal.

**Alleged Deviation from the Scope of Rebuttal**

{¶72} Hart further argues that Peterman's testimony exceeded the proper scope of rebuttal, pointing to her objection at *7T. 940-942. (Appellant's brief at 25-26).* The record reveals otherwise.

{¶73} Hart lodged no objection during Peterman's direct examination during the State's rebuttal. *7T. at 887-897.* On cross-examination, defense counsel introduced photographs that Peterman had not previously reviewed, photographs taken months after the fire when Ransom returned to the premises. *7T. at 932, 936.* Counsel questioned Peterman about these images, including the presence of extrinsic debris and black char near the right-front burner. *Id. at 936-937.*

{¶74} On redirect, the State asked Peterman whether those photographs were indicative of secondary stove damage. *Id. at 939.* Hart objected, asserting that Peterman could not offer "new opinions" based on the photographs. *7T. at 942.* The trial court overruled the objection, finding that the defense "opened the door" by introducing the photographs and eliciting related testimony. *Id. at 941-942.*

{¶75} The trial court's ruling falls squarely within the broad discretion afforded under Evid.R. 611 and established precedent. *See Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271 (1991); *Beard v. Meridia Huron Hosp.*, 2005-Ohio-4787, ¶ 20. The challenged redirect testimony merely clarified and responded to issues first raised by the defense on cross-examination; it did not expand the subject matter of rebuttal.

**No Plain Error**

{¶76} Even assuming arguendo that admitting Peterman's rebuttal testimony was error, Hart has not demonstrated that the alleged error was plain, obvious, or outcome-determinative. *See Rogers*, 2015-Ohio-2459, ¶ 22.

{¶77} The jury heard competing expert theories from Ransom and Bennett, both of which were extensively explored. Peterman's testimony did not introduce a new theory; it narrowed the dispute and directly addressed the defense assertion that the cause was "undetermined." The evidence of Hart's guilt, including her inconsistent statements, acquisition of renters' insurance two days before the fire, and evidence she claimed losses for items she did not own, remains substantial and compelling.

{¶78} Hart has not shown a reasonable probability that the verdict would have been different absent Peterman's testimony. Accordingly, no plain error occurred.

{¶79} Hart's second assignment of error is overruled.

**III.**

{¶80} In her third assignment of error, Hart contends that trial counsel was constitutionally ineffective for failing to object to what she characterizes as improper expert testimony from then-Captain Michael Carey of the Mansfield Fire Department. She maintains that Carey offered specialized conclusions concerning fire origin, cause, chemistry, and fire science that required expert qualification under Evid.R. 702. The State responds that Carey's opinions were properly admitted as lay testimony under Evid.R. 701 because they were grounded in his first-hand observations while suppressing and assessing the fire.

**Background**

{¶81}  Carey testified that he was the first firefighter to enter the structure and extinguish the active fire. *3T at 372*. He observed visible flames upon entering the kitchen, with the "main body" of the fire located on the countertop to the right of the stove, extending upward along the wall and into the ceiling. *Id. at 376, 382*. He expressly testified the fire was not burning on the stove. *Id. at 376.*

{¶82}  Carey explained that as part of his duties, he conducts an initial assessment of a fire's point of origin and determines whether conditions warrant contacting a certified fire investigator. *3T at 374, 388-389*. He testified that Hart's explanation— that the stove had been left on—did not align with his observations. *Id. at 377.*

{¶83}  Drawing from his on-scene perceptions and two-and-a-half decades of firefighting experience, Carey testified that a visible "V-pattern" and the concentration of damage indicated the fire originated in the corner to the right of the stove, not on the burner. *3T at 378, 386-387.* He described photographs showing the V-pattern and the condition of the stove and further explained that the limited damage to the stove appeared secondary, likely from debris falling onto it. *Id. at 398*. Based on these observations, he terminated his assessment and requested a fire investigator. *Id. at 388-389, 399.*

**Governing Law—*Strickland* and Opinion Testimony Rules**

{¶84}  To prevail on an ineffective-assistance claim, a defendant must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Prejudice requires a reasonable probability that, but for counsel's error, the outcome would have been different. *Id.* at 694; *Andrus v. Texas*, 590 U.S. 806, 813-

814 (2020). Failure to establish either prong is fatal. *Strickland* at 697; *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

{¶85} Counsel's failure to object, standing alone, is insufficient to demonstrate ineffective assistance, absent proof of prejudice. *State v. Fears*, 86 Ohio St.3d 329, 347 (1999); *State v. Roman-Navarre*, 2025-Ohio-3166, ¶ 102 (5th Dist.).

{¶86} Under Evid.R. 701, a lay witness may offer opinion testimony that is (1) rationally based on perception and (2) helpful to understanding a fact in issue. Evid.R. 602 requires personal knowledge. Expert testimony under Evid.R. 702 is reserved for matters beyond ordinary lay experience and requiring specialized training.

**Analysis**

{¶87} Under these circumstances, counsel was not deficient for failing to object to Carey's testimony. Carey's statements concerning the location of the fire, the V-pattern, the condition of the stove, and the concentration of damage were all grounded squarely in his first-hand observations while entering, suppressing, and evaluating the fire scene. His testimony did not purport to reconstruct the fire scientifically or to offer a technical causation opinion requiring expert qualification under Evid.R. 702.

{¶88} Carey was a veteran firefighter with twenty-six years of experience in fire suppression and initial scene assessment. His testimony described what he saw: active flames, burn patterns, levels of charring, and the physical condition of the stove and surrounding area. Because Carey's testimony about the fire's most likely point of origin was rationally based on his perceptions as a qualified and experienced firefighter, and was helpful to the jury, we find any objection would not have resulted in the exclusion of Carey's testimony. *See State v. DeMars,* 1993 Ohio App. LEXIS 1537 * 21 (8th Dist., Mar. 18,

1993); *State v. Penn,* 2020-Ohio-3158, ¶34 (9th Dist.), *see also, State v. Smith*, 2002-Ohio-6659 (doctors who had compared a sofa cushion to abrasions on the murder victim's face could testify as lay witnesses that the cushion could have caused the abrasions); *State v. Jackson*, 2005-Ohio-5981, ¶74 (police officer's testimony concerning the recovery of a tooth fragment was admissible as opinion testimony of a lay witness because it was based on his firsthand perception and helpful in understanding his testimony about the evidence he had gathered at the scene.); *State v. Drummond*, 111 Ohio St.3d 14, 45 (2006) (testimony from a police officer that a photograph taken at the crime scene showed "brain matter * * * leading from the living room to the hallway" was admissible lay opinion because it was based on his perception of evidence at the residence where the killing occurred).

{¶89} Carey did not conduct laboratory testing, apply scientific formulas, or offer a definitive causation opinion. He made a preliminary field assessment to determine whether a fire investigator was needed - a routine function of an experienced firefighter. This is precisely the context in which Evid.R. 701 permits lay opinion testimony.

{¶90} Because an objection would not likely have resulted in exclusion of Carey's testimony, counsel's performance was not deficient.

**Conclusion**

{¶91} Because Carey's testimony was properly admissible as lay opinion under Evid.R. 701, trial counsel was not deficient for failing to object.

{¶92} Accordingly, Hart's third assignment of error is overruled.

## IV.

{¶93} In her fourth assignment of error, Hart contends the trial court erred by permitting the State to shift the burden of proof during its cross-examination of defense expert Russell Bennett regarding the cause and origin of the fire. We disagree.

### Background

{¶94} Bennett testified that Ransom's hypothesis - that the fire originated beneath the upper wall cabinet in the right-rear corner, and alternative hypothesis - that the fire began on the right front stove burner, were "plausible and possible." *5T. at 845-846.* Bennett further explained that his report did not identify either hypothesis as more probable. *Id. at 847.* Bennett also agreed that he could not rule out an intentional human act as the cause of the fire. *Id. at 848.* Because he found two competing ignition sources, Bennett ultimately classified the cause as "undetermined." *Id. at 815.*

{¶95} Hart argues that the prosecutor's questioning of Bennett regarding the plausibility of State's expert Ransom's hypothesis amounted to improper burden shifting in violation of her constitutional rights.

### Legal Standard

{¶96} The Sixth Amendment and the Due Process Clause require the State to prove each element of a charged offense beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99 (2013); *Hurst v. Florida*, 577 U.S. 92 (2016). A prosecutor may not shift the burden of proof to the accused or imply that a defendant has any obligation to disprove the State's case.

**Analysis**

{¶97} Hart mischaracterizes the prosecutor's cross-examination. Our review of the transcript shows no effort by the State to suggest that Hart bore any burden of proof. Rather, the prosecutor properly highlighted that defense expert Bennett - despite his critiques of Ransom's investigation - acknowledged that Ransom's hypothesis was itself "plausible and possible." *5T. at 845-846*. Pointing out that the defense expert agreed the State's theory was scientifically viable does not shift the burden; it directly tests the credibility and weight of the defense expert's criticism of the State's investigation.

{¶98} The defense theory at trial centered on the claim that Ransom deviated from accepted methodology and that his conclusions were unreliable. The prosecutor's cross-examination simply revealed that the defense expert's own analysis did not meaningfully contradict Ransom's inferences about the location of origin. Such questioning falls squarely within the permissible scope of cross-examination and does not suggest that Hart was required to disprove the State's case.

**No Showing of Prejudice**

{¶99} Even assuming the questioning approached the margins of propriety, Hart cannot demonstrate prejudice. The trial court instructed the jury that Hart was presumed innocent, that the State bore the burden to prove every element of each offense beyond a reasonable doubt, and that counsel's questions are not evidence. *7T. at 967, 969, 973.* Hart lodged no objection to these instructions, nor does she assign instructional error on appeal. Jurors are presumed to follow the court's instructions. *See State v. Loza*, 71 Ohio St.3d 61, 75 (1994); *Pang v. Minch*, 53 Ohio St.3d 186, 187 (1990); *State v. Carbaugh*, 2023-Ohio-1269, ¶ 84 (5th Dist.).

{¶100} Viewed in the full context of the trial, the prosecutor's limited questions to Bennett did not misstate the law, shift the burden of proof, or affect Hart's substantial rights. Accordingly, Hart's fourth assignment of error is overruled.

**V.**

{¶101} In her fifth assignment of error, Hart contends that she was denied her due process right to a fair trial as a result of prosecutorial misconduct during rebuttal closing argument. She challenges several remarks made by the prosecutor, including comments characterizing the family's financial circumstances, analogies to religious scripture, assertions challenging defense counsel's theory of the case, and a colloquial remark concerning stove fires. *(7T. at 1019-1023).* Specifically, during the rebuttal portion of the State's closing argument the prosecutor made the following statements, to which Hart now takes exception:

"What a horrible summer for that poor kid. Going door-to-door for money because her grandmother is so desperate for money. Look at the insurance records." (7T. at 1019).

"Matthew, Mark, Luke, and John wrote the Gospel. Assistant Chief Peterman is on the committee that writes the Bible * * * He wrote the Bible, and you want to sit here and say that man copied homework. He's on the committee that wrote the Bible. He didn't copy homework. He writes the rules. He's the teacher. He doesn't have to do homework." (7T. at 1021-1022).

"If you want to sit there and say one of the most well decorated expert investigators is copying homework, how dare you? How dare you? It's

literally the Bible" and "Think about the logical gymnastics defense counsel had to turn to put down my expert but hold up his." (7T. at 1019, 1020).

"I had some thoughts during defense counsel's closing, which is, did we watch the same trial? Did we watch the same exhibits? I also thought about Mickey Mouse or Donald Duck making a fire on the piano and the dancing flames jump around. In order to believe defense counsel's theory of the case, which is not evidence, you would have to believe fire dances around." (7T. at 1017).

"The running joke is if you are going to start a stove fire, damn well better make sure it started on the stove." (7T. at 1023).

{¶102} Because Hart failed to object to these statements at trial, she has forfeited all but plain-error review.[5] *See State v. Abdullahi*, 2024-Ohio-418, ¶ 29 (10th Dist.).

**Plain-Error Standard**

{¶103} To establish plain error, a defendant must demonstrate (1) an error, (2) that is plain or obvious, and (3) that affected the outcome of the trial. *State v. McAlpin*, 2022-Ohio-1567, ¶ 66, citing *State v. Rogers*, 2015-Ohio-2459, ¶ 22. These elements are conjunctive; failure to establish any of them defeats the claim. *State v. Bailey*, 2022-Ohio-4407, ¶¶ 8-9. Even where the elements are met, an appellate court should intervene only under exceptional circumstances to prevent a manifest miscarriage of justice. *Rogers* at ¶ 23; *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

---

[5] Although Hart suggested to the trial court after the jury retired to deliberate that the biblical reference could possibly be grounds for a mistrial, she never moved the court to declare a mistrial. *7T. at 1032-1033.*

{¶104} Under plain-error review, the burden rests entirely on the defendant to demonstrate a reasonable probability that, but for the challenged error, the result of the proceeding would have been different. *State v. Jones*, 2020-Ohio-3051, ¶¶ 17-18; *State v. Ridenbaugh*, 2024-Ohio-3072, ¶¶ 20-21 (5th Dist.).

**Prosecutorial Misconduct in Closing Argument**

{¶105} Courts evaluate alleged prosecutorial misconduct in closing argument by determining (1) whether the challenged remarks were improper, and, if so, (2) whether they prejudicially affected the defendant's substantial rights. *State v. Smith*, 14 Ohio St.3d 13, 14 (1984); *State v. Garrett,* 2022-Ohio-4218, ¶ 144. The focus of this inquiry is the fundamental fairness of the trial as a whole, not the culpability of the prosecutor. *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

{¶106} In *State v. Draughn*, this Court recognized that both parties are entitled to advocate forcefully in closing argument, and considerable latitude is afforded to the prosecutor in rebuttal, particularly when responding to attacks on the credibility or methodology of the State's witnesses. *Draughn*, 76 Ohio App.3d 664, 670-672 (5th Dist. 1992). Although a prosecutor may not express personal belief in a witness's truthfulness or ask the jury to convict on grounds other than the evidence, he may comment on the weight of the evidence, point out inconsistencies in the defense's theory, and address issues raised during the defense argument. *Id.*

**Application**

{¶107} Viewed in context, the challenged remarks were within the permissible scope of rebuttal. The prosecutor's statements—although colorful—were directed at countering Hart's assertion that the State's expert had merely "copied homework" and that

the defense expert's competing hypothesis was superior. Courts have consistently held that such rhetoric constitutes fair comment on the evidence. *See State v. Tibbetts*, 92 Ohio St.3d 146, 168 (2001) (characterization of the defendant as a "trained killer" permissible); *State v. Nields*, 93 Ohio St.3d 6, 37 (2001) (description of defendant as a "mean-spirited derelict" permissible). Here, the prosecutor did not misstate the evidence, rely on facts outside the record, or suggest that the jury should convict on improper grounds. *See Darden v. Wainwright*, 477 U.S. 168, 181-182 (1986).

{¶108} Further, any potential prejudice was mitigated by the trial court's explicit instructions that closing arguments are not evidence. *See State v. Kirkland*, 2020-Ohio-4079, ¶ 117; *Garrett* at ¶ 158. Hart did not object to these instructions, nor does she challenge them on appeal. A jury is presumed to follow the instructions given by the court. *Pang v. Minch*, 53 Ohio St.3d 186, 187 (1990); *State v. Carbaugh*, 2023-Ohio-1269, ¶ 84 (5th Dist.).

{¶109} When the prosecutor's remarks are considered in the full context of the trial, we find no reasonable probability that the outcome would have differed had the remarks not been made. *See State v. LaMar*, 2002-Ohio-2128, ¶ 170. Hart therefore cannot satisfy the demanding plain-error standard.

**Conclusion**

{¶110} Because Hart has not demonstrated that the prosecutor's rebuttal comments constituted plain error or deprived her of a fundamentally fair trial, her fifth assignment of error is overruled.

## VI.

{¶111} In her sixth assignment of error, Hart invokes the doctrine of cumulative error. The Supreme Court of Ohio recognized this doctrine in *State v. Brown*, 2003-Ohio-5059, explaining that multiple errors, though harmless individually, may collectively deprive a defendant of a fair trial.

{¶112} Here, however, Hart merely cites the doctrine and broadly references her earlier assignments of error without articulating how the alleged errors interacted or produced a prejudicially cumulative effect. Such conclusory assertions are insufficient. As courts have repeatedly emphasized, it is simply not enough to intone the phrase "cumulative error." *State v. Sapp*, 2004-Ohio-7008, ¶ 103; *State v. Bethel*, 2006-Ohio-4853, ¶ 197; *State v. Allen*, 2010-Ohio-4644, ¶ 254 (5th Dist.); *State v. Grate*, 2023-Ohio-2103, ¶ 100 (5th Dist.).

{¶113} Moreover, the doctrine is inapplicable where no error has been shown. *State v. Carter*, 2003-Ohio-1313, ¶ 37 (5th Dist.). To the extent any asserted error was determined to be harmless or not rising to plain error, the combined effect of such non-prejudicial rulings likewise cannot warrant reversal. *State v. Leonard*, 2004-Ohio-6235, ¶ 185. A defendant cannot establish a right to relief by simply joining her claims together. *State v. Mammone*, 2014-Ohio-1942, ¶ 173; *State v. Garrett*, 2022-Ohio-4218, ¶ 200.

{¶114} Because this case does not present multiple prejudicial errors—indeed, we have found none—there is no basis for applying the cumulative-error doctrine. Accordingly, Hart's sixth assignment of error is overruled.

For the reasons stated in our Opinion, the judgment of the Richland County Court of Common Pleas is affirmed.  Costs to Appellant, Carolyn S. Hart.

By: Popham, J.

Hoffman, P.J. and

Gormley, J., concur