[Cite as *State v. Michalski*, 2026-Ohio-2398.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
ASHLAND COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO, | Case No. 25-COA-023 |
| Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Ashland County Court of Common Pleas, Case No. 24-CRI-236 |
| ROBERT MICHALSKI, JR., | Judgment:   Affirmed |
| Defendant - Appellant | Date of Judgment Entry: June 24, 2026 |

**BEFORE:** Andrew J. King; William B. Hoffman; Robert G. Montgomery, Judges

**APPEARANCES:** CHRISTOPHER R. TUNNELL, Ashland County Prosecuting Attorney by JAMES B. REESE III, for Plaintiff-Appellee; BRIAN A. SMITH, for Defendant-Appellant.

*Montgomery, J.*

### STATEMENT OF FACTS

**{¶1}** On August 17th, 2024, the child victim, who was 6 years old at the time, was on his annual two week visit with his mother. The child's mother was residing with Appellant, who they call "Uncle Bob," in a home that Appellant owns.  On the day in question, the child and several other individuals were present.  The child's mother, Angelina, told the child victim to go pick up dog excrement in the yard. The child refused.

**{¶2}** After this refusal, the child was instructed to go inside. The child's hands and feet were ultimately handcuffed to a chair in a back room and Appellant's pit bull named Mason, entered the room to terrorize the child. Appellant ordered his sister to stay in the room with the child but did not restrain the dog in any manner. The door to the room closed. The pit bull went for the child's throat, latched on, and began to bite the child viciously. Individuals outside the home heard screaming and commotion, rushed into the house, eventually got the pit bull released, and called 911. Ashland County Sheriff's Deputy, Asa Derry ("Deputy Derry"), responded to the 911 call. The Deputy was flagged down by the caller at Cattleman's Restaurant. The Deputy provided life sustaining care on the child's deep neck lacerations until EMS arrived to transport the child to the emergency room.

**{¶3}** Dylan Olivas ("Olivas"), was in a relationship with the child victim's mother, Angelina Williams ("mother"). Olivas testified that he was outside when he heard "screaming and commotion inside of the house," and when he went inside, he saw Appellant's pit bull attached to the throat of child victim. Olivas testified that handcuffs were on the child but he did not know who put them there. Deputy Rondal Stone ("Stone") of the Ashland County Sheriff's Office testified that he spoke with Taylor Marvin-Brown ("Marvin-Brown"), who told Stone that the bite happened inside Appellant's home. Stone testified, "you could see multiple blood stains leaving from the front door out to the steps on the front porch." Deputy Derry testified that "we received three different stories," one from Laura Williams ("Laura") the child's grandmother and

Appellant's sister; another from the child's mother ("Angelina"); and another from co-defendant Taylor Marvin-Brown.[1]

**{¶4}** Law enforcement ultimately determined that Appellant owned the dog. Within 24-hours, they executed a search warrant and found the dog in the upstairs portion of the home in what Deputy Derry described as an attic "cubby hole." The deputy who found the dog had to pull away chairs and other items to get to the dog. Deputy Derry testified that when they arrived at the house to execute the warrant, Appellant was uncooperative. Detective Jump testified as follows:

Q: And Robert Michalski was there?

A: Yes.

Q: Did you get to speak with him at all?

A: Yes, I did.

Q: Tell us about that?

A: At first he was upset, irate that they were there to do a search warrant, and he had to be restrained several times, and one point threatened to actually put him in the car, and he kept trying to go up on the porch and walking behind the officers, and he was told to sit in the chair or he was going to be put in a chair.

Q: He has been quiet throughout this trial, you are saying that he wasn't then?

A: No.

Q: Was he helpful?

---

[1] Angelina and Marvin-Brown pled guilty prior to trial. Marvin-Brown pled guilty to "kidnapping" and "child endangering," and was awaiting sentencing at the time of Appellant's trial.

A: No.

Q: Did he tell you that the dog was in the house?

A: No.

Q: Do you know were the handcuffs and tie ropes were found?

A: Immediately right inside of the main entrance door, immediately within like five to ten feet of the door that we went in.

*Trial Tr.*, Day 2, pp. 29-30.

**{¶5}** Appellant denied owing the handcuffs stating they were left at the home by a previous resident.

**{¶6}** Appellant was charged with multiple crimes and pled not guilty. The matter proceeded to trial and the jury found Appellant guilty of the following: (1) Count Four, Complicity to Commit Endangering Children (first child victim who was bitten by the dog), a third-degree felony and violation of R.C. 2919.22(B)(3), (E)(3); (2) Count Five, Complicity to Commit Endangering Children (second child victim), a third degree felony and violation of R.C. 2919.22(B)(3), (E)(3); and (3) Count Six, Tampering With Evidence, a third-degree felony and violation of R.C. 2921.12(A)(1), (B).

## ASSIGNMENTS OF ERROR

**{¶7}** "I. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶8}** "II. THE FAILURE OF APPELLANT'S TRIAL COUNSEL TO FILE A MOTION IN LIMINE TO EXCLUDE THE STATE'S EXHIBITS CONSTITUTING DUPLICATE PHOTOGRAPHS OF THE BLOOD, KEYS, HANDCUFFS, AND ROPE CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF APPELLANT'S RIGHT TO COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

**{¶9}** "III. THE TRIAL COURT ABUSED ITS DISCRETION IN NOT ALLOWING A PHYSICAL DEMONSTRATION OF WHETHER DEPUTY CURTIS HALL COULD PLACE HANDCUFFS ON APPELLANT'S TRIAL COUNSEL WITHOUT DEPUTY CURTIS HALL USING HIS FINGERS, IN VIOLATION OF APPELLANT'S RIGHT TO CONFRONTATION OF WITNESSES UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND APPELLANT'S RIGHT AGAINST SELF-INCRIMINATION UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."

**{¶10}** "IV. THE TRIAL COURT'S DECISION TO ADMIT DUPLICATE PHOTOGRAPHS OF THE BLOOD, KEYS, AND HANDCUFFS, OVER APPELLANT'S OBJECTION, VIOLATED EVID.R. 403(A), EVID.R. 403(B), AND APPELLANT'S RIGHT TO DUE PROCESS AND A FAIR TRIAL UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."

**{¶11}** "V. THE TRIAL COURT COMMITTED PLAIN ERROR IN IMPOSING CONSECUTIVE SENTENCES ON APPELLANT, BECAUSE ITS FINDINGS UNDER R.C. 2929.14(C)(4) WERE NOT SUPPORTED BY THE RECORD."

## LAW AND ANALYSIS

### *Manifest Weight of the Evidence*

**{¶12}** In his first assignment of error, Appellant claims the jury clearly lost its way in finding him guilty of endangering children either as a principal offender or under a theory of complicity, and in finding him guilty of tampering with evidence. In support, Appellant claims that various testimony is inconsistent with or contrary to other testimony, and/or that the State failed to present direct evidence of Appellant's guilt. Appellant's arguments are wholly without merit.

**{¶13}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *State v. Williams*, 2003-Ohio-4396, ¶ 83. When a court of appeals reverses a judgment of a trial court as against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of conflicting testimony. *State v. Jordan*, 2023-Ohio-3800;

*Thompkins*, at 387; *Williams,* ¶ 60. The reviewing court must determine whether the jury clearly "lost its way and created such a manifest miscarriage of justice" that the conviction cannot stand, and a new trial must be ordered. *Id.*, quoting *State v. Group*, 2002-Ohio-7247, ¶ 77 (citations omitted). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *State v. Dotson*, 2017-Ohio-5565, ¶ 1 (5th Dist.).

{¶14} In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact. *Eastley v. Volkman,* 2012-Ohio-2179, ¶ 21; *In re Z.C.*, 2023-Ohio-4703, ¶ 14. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the [trier of fact] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984). In determining whether a witness is credible, the trier of fact is in the best position to consider inconsistencies in testimony, as well as the witnesses' demeanor and manner of testifying. *Dotson*, ¶ 50. A defendant is not entitled to a reversal on manifest weight grounds simply because there was inconsistent evidence presented at trial. *Id.*; *State v. Raver*, 2003-Ohio-958, ¶ 21 (10th Dist.). If the evidence is susceptible to one or more interpretations, a reviewing court must interpret it in a manner consistent with the verdict. *Dotson*, ¶ 49.

{¶15} Circumstantial evidence has the same probative value as direct evidence, and a conviction can be sustained based on circumstantial evidence alone. *State v. Mahone*, 2014-Ohio-1251, ¶ 48 (10th Dist.). It is within the province of the jury to consider the probative value of the evidence, whether direct or circumstantial, and to

draw reasonable inferences from the facts and testimony in evidence. *Id.*, ¶ 49. Here, upon review, we find that the jury did not "clearly" lose its way or create a manifest injustice in finding Appellant guilty. Accordingly, Appellant's convictions are not against the manifest weight of the evidence.

{¶16} Specifically, R.C. 2919.22 [Child endangering] provides, in pertinent part, as follows:

(B) No person shall do any of the following to a child under eighteen years of age or a child with a mental or physical disability under twenty-one years of age:

. . .

(3) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child.

. . .

(E)(1) Whoever violates this section is guilty of endangering children.

. . .

(3) If the offender violates division (B)(2), (3), (4), or (6) of this section, except as otherwise provided in this division, endangering children is a felony of the third degree.

R.C. 2919.22(B)(3), (E)(3).

**{¶17}** Regarding complicity, R.C. 2923.03 defines it as follows:

(A)    No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(2) Aid or abet another in committing the offense.

. . .

(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

**{¶18}** And finally, tampering with evidence is set forth in R.C. 2921.12 and provides, in pertinent part, as follows:

(A)    No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1)    Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;

. . .

(B) Whoever violates this section is guilty of tampering with evidence, a felony of the third degree.

R.C. 2921.12(A)(1), (B).

**{¶19}** Here, the testimony from law enforcement officers, first responders, co-defendants, as well as the video evidence showing Appellant's own contradictory statements, provides ample credible evidence to support Appellant's convictions. With

regard to Counts Four and Five, Detective Garrett Dudte ("Dudte") of the Ashland County Sheriff's Office testified that Angelina identified Appellant as having "tied up" the children on prior occasions, as well as the day in question, and claimed it was "Bobby's" idea. *Trial Tr.*, p. 22. Law enforcement witnesses as well as the child victim himself identified Appellant as the one who restrained the child victim on August 17. The child victim also stated that on prior occasions, Appellant restrained him and another child. Angelina's phone contained disburbing photos showing both child victims being restrained and said photos were admitted into evidence. Thus, although Appellant claims that the officers did not physically "witness" Appellant restraining the child victims, the jury could have reasonably believed that he did.

{¶20} Further, contrary to Appellant's claims that he could not tie ropes or operate handcuffs due to his disability, testimony demonstrates that Appellant caged and muzzled his dogs, tied his own shoes, inserted keys into his front door and car ignition and turned the keys, rolled his own joints, etc. Appellant's sister and the child's grandmother, Laura Williams, testified that while Appellant has not had an easy life due to his disability, he is in fact able to use various objects that require fine motor functionality. *Trial Tr.,* Day 3, pp. 10-12. Indeed, prior to Angelina living with Appellant, he lived by himself. It is certainly possible that Appellant may not have been as helpless as he portrayed himself at trial. Appellant's claim that Marvin-Brown had motive to lie, because he was awaiting sentencing for his offenses, is similarly unavailing. Marvin-Brown was forthcoming at trial that he pled guilty to kidnapping and endangering children and had not yet been sentenced. It was within the province of the jury to consider the testimony and determine Marvin-Brown's credibility.

{¶21} Regarding tampering with evidence, the jury was free to disbelieve Appellant's version that the dog was "lost." To the contary, law enforcement testified they found the dog on the top floor of the home in an attic "cubby hole" behind multiple chairs and laundry baskets and blankets. One officer testified the dog was "barricaded." *Trial Tr.*, Day One, pp. 32-33. Further, Appellant was uncooperative when the officers arrived to conduct the search warrant, and even had to be restrained, and did not disclose to the officers that the dog was upstairs.

{¶22} Simply stated, Appellant's arguments center around what he considers false or contradictory statements made by other witnesses and cites a lack of direct evidence. However, as set forth above, circumstantial evidence is equally probative to direct evidence and is indeed sufficient to support a conviction. Similarly, the jury is charged with making credibility determinations. Where the evidence is susceptible to one or more interpretations, a reviewing court must interpret it in a manner consistent with the verdict. *Dotson*, ¶ 49. Because the jury did not clearly lose its way in finding Appellant guilty of the three charges above, Appellant's first assignment of error is overruled.

### *Ineffective Assistance of Counsel*

{¶23} In the second assignment of error, Appellant claims trial counsel was ineffective for failing to file a Motion in Limine to exclude duplicative photos of the blood stains, handcuffs, and keys from evidence. Appellant claims that the duplicative photos should have been excluded under both Evid.R. 403(A) and Evid.R. 403(B). The State responds that the photos are not duplicative because they show different angles of the evidence. Indeed, the photos illustrate both the testimony of the police officers who arrived on scene and the crime scene itself.

**{¶24}** The standard of review for ineffective assistance of counsel as set forth in *Strickland v. Washington,* 466 U.S. 668 (1984), was discussed by this court in *Mansfield v. Studer,* 2012-Ohio-4840 (5th Dist.):

A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364 (1993); *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989). In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley*. *Knowles v. Mirzayance,* 556 U.S. 111 (2009).

In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, at 689. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, at 689.

*Studer,* ¶¶ 58-61.

**{¶25}** Thus, to prevail on an ineffective assistance of counsel argument, appellant must establish two prongs: first, that his trial counsel's performance fell below an objective standard of reasonable representation involving a "substantial violation" of an essential duty to appellant. *Studer,* ¶¶ 58-61. This requires showing that counsel made

errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Id*.; *Strickland,* at 687. Second, Appellant must demonstrate actual prejudice by such alleged ineffectiveness. In other words, there must be a reasonable probability that *but for* counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland*, at 691-696.

{¶26} Importantly, as stated above, an appellate court's review of trial counsel's actions and decisions is highly deferential and strategic or tactical decisions will not form a basis for an ineffective assistance of counsel claim. *Id*., at 689; *State v. Clayton*, 62 Ohio St.2d 45, 48-49 (1980); *State v. Mason*, 82 Ohio St.3d 144, 157-58 (1998) (stating that an appellate court may not second guess a trial counsel's strategy decisions). Further, in determining a claim of ineffective assistance of counsel, our review is limited to the record before us. *State v. McCauley*, 2017-Ohio-4373, ¶ 21 (5th Dist.), citing *State v. Prophet*, 2015-Ohio-4997, ¶ 32 (10th Dist.).

{¶27} Here, trial counsel's decision not to file a Motion in Limine is precisely the definition of a tacitcal or strategic decision that will not be second-guessed by an appellate court. Trial counsel provided an effective and comprehensive defense to Appellant, who was charged with horrendous crimes against a young child. Further, the Ohio Supreme Court ruled that photos of blood from different angles are not duplicative and are admissible. *State v. Leonard,* 2004-Ohio-6235, ¶¶ 86-87. Each photo depicts a different view or angle of the injuries and crime scene. As such, Appellant cannot demonstrate that the outcome of the trial would have been different had said Motion been filed. Even if counsel filed said Motion in Limine, the court has broad discretion in ruling on evidentiary matters, meaning there was no guarantee the trial court would have granted any such Motion. Appellant's second assignment of error is overruled.

### *Physical Demonstration*

**{¶28}** In the third assignment of error, Appellant argues that because he was not able to have a law enforcement witness on the stand, Deputy Hall, attempt to handcuff defense counsel as a demonstration for the jury - to show that Appellant could not do it - his confrontation clause rights were violated. Appellant's argument is without merit.

**{¶29}** A trial court is vested with broad discretion in determining the admissibility of evidence, so long as such discretion is exercised within the rules of procedure and evidence. "The admission of relevant evidence pursuant to Evid.R. 401 rests within the sound discretion of the trial court." *Rigby v. Lake County*, 58 Ohio St.3d 269, 271 (1991), citing *e.g., State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. An appellate court reviews the trial court's admission or exclusion of evidence under an abuse of discretion standard. *Rigby*, at 271; *State v. Finnerty*, 45 Ohio St.3d 104, 107 (1989). Aside from Appellant's extremely unusual request, his argument that he was not able to confront the witness is without merit. The record demonstrates that defense counsel cross-examined Deputy Hall *at length* and that the demonstration would add nothing by way of "evidence." Thus, the court did not abuse its discretion in denying the request. Appellant's third assignment of error is overruled.

### *Duplicative Photos violated his right to a fair trial*

**{¶30}** In his fourth assignment of error, Appellant argues that the admission of duplicative photos violated his right to a fair trial. Again, we disagree. As stated, "[t]he admission of relevant evidence pursuant to Evid.R. 401 rests within the sound discretion of the trial court." *Rigby*, at 271. The admitted photos were taken from different angles, showing the victim's injuries as well as different areas of the crime scene. Thus, the photos were not duplicative. Defense counsel fully cross-examined the witness describing

the photos. The trial court did not abuse its discretion in admitting same. Appellant's fourth assignment of error is overruled.

### Consecutive Sentences

{¶31} In the fifth and final assignment of error, Appellant argues the court erred in imposing consecutive sentences because the record does not support the court's findings. Appellant makes several arguments against the severity of his sentence. Again, we disagree.

{¶32} Generally, a trial court has broad discretion when imposing a sentence and in determining whether multiple prison terms shall be served consecutively. *State v. Bonnell,* 2014-Ohio-3177. However, such discretion is not unlimited and is subject to review. The appropriate standard of review on appeals challenging a felony sentence is set forth in R.C. 2953.08(G)(2). *Bonnell,* ¶ 9. An appellate court may vacate a sentence and/or remand a matter to the trial court when a sentence does not comport with sentencing statutes, or when the sentence is "otherwise contrary to law." *Id.,* ¶ 9. When reviewing a criminal sentence, R.C. 2953.08(F) requires a court to examine the entire record, including any oral or written statements and presentence-investigation reports. *State v. Carbaugh*, 2023-Ohio-1269, ¶ 25 (5th Dist.) (citations omitted).

{¶33} R.C. 2929.14(C)(4) sets forth the specific findings a trial court must make on the record when imposing any consecutive sentence. Before a trial court may impose consecutive sentences, it must make three findings: (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that one of the three

specific findings set forth in (C)(4)(a)-(c) apply. *State v. Carmel,* 2014-Ohio-1209, ¶ 6 (9th Dist.); *Carbaugh*, ¶ 32.

**{¶34}** In *Bonnell,* the Ohio Supreme Court determined that when imposing consecutive sentences, "a trial court must state the required findings as part of the sentencing hearing, and by doing so it affords notice to the offender and to defense counsel." *Bonnell*, ¶ 29; Crim.R. 32(A)(4). And because a court speaks through its journal entries, "the court should also incorporate its statutory findings into the sentencing entry." *Id.,* ¶ 29, citing *State v. Brooke,* 2007-Ohio-1533, ¶ 47.

**{¶35}** Importantly, the court does not need to state reasons for the findings, the findings alone are sufficient. *Bonnell*, ¶¶ 29-30. If the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record supports the findings, then consecutive sentences should be upheld. *Id*.; *State v. Wade*, 2024-Ohio-4556 (5th Dist.) (concluding the trial court's failure to recite precise statutory language of the required findings for consecutive sentences did not render sentences contrary to law).

**{¶36}** Here, the record reveals that prior to imposing sentence, the Court afforded all parties the opportunity to be heard. The Court gave defense counsel an opportunity to speak and present mitigation on Appellant's behalf, personally addressed Appellant, and provided Appellant an opportunity for allocution. The court reviewed all presentence reports, victim statements, and considered the purposes and principles of sentencing as well as the the seriousness and recidivism factors. The Court then sentenced Appellant to 36 months for each offense and ordered the sentences to run consecutive to each other, for an aggregate prison term of 108 months. The sentencing hearing transcript reflects

that the trial court made the required consecutive sentence findings. In its corresponding Judgment Entry, the court stated:

> The Court finds that consecutive sentences are necessary to punish offender or protect the public from future crime and not disproportionate to the seriousness of conduct and danger posed by the defendant and that two or more offenses are part of one or more courses of conduct; and the harm caused is so great or unusual that a single prison term would not adequately reflect the seriousness of the conduct. Therefore, the sentences imposed for Counts Four, Five, and Six shall be served consecutively to each other.

{¶37} After reviewing the record in its entirety, we conclude that the trial court properly imposed consecutive prison terms. These offenses were horrific, involved children who were defenseless, scared, and suffered significant physical and emotional trauma. Accordingly, Appellant's fifth assignment of error is overruled.

## CONCLUSION

{¶38} Appellants first, second, third, fourth, and fifth assignments of error are overruled in their entirety.

{¶39} For the reasons stated in our accompanying Opinion, the judgment of the Ashland County Court of Common Pleas is Affirmed.

{¶40} Costs to Appellant.

By: Montgomery, J.

King, P.J. and

Hoffman, J. concur.